**Mrs. Annie CAVITT, Appellant,**

v.

**JETTON'S GREENWAY PLAZA CAFETERIA, Appellee.**

**No. 16998.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 2, 1978.

Jefferson & Maley, John E. Sherman, Houston, for appellant.

Austin & Arnett, Monroe Northrop, Houston, for appellee.

COLEMAN, Chief Justice.

This is an appeal from a judgment for the defendant in a personal injury action. The case was tried by a jury which found the defendant guilty of serving unwholesome food which caused injury to the plaintiff, but failed to award money damages in any amount. The case will be reversed and the cause remanded.

The plaintiff was having a dinner at the cafeteria when she saw a roach in her dessert. She became nauseated, notified an employee of the defendant, and then left with her dinner partner, Dr. Cooper, a psychologist.

Mrs. Cavitt had been under the care of a physician for a year at the time of the incident in question. She was being treated for a stomach ailment, the symptoms of which were identical as those described as resulting from the incident in question.

This appeal is presented on one point of error:

"The county civil court at law erred in failing to grant appellant a new trial on the issue of damages."

The appellee contends that this point is not properly preserved in appellant's motion for a new trial.

In her motion for a new trial, the appellant stated that "the court erred by entering judgment in favor of the defendant, Jetton's Greenway Plaza Cafeteria, and against the plaintiff for the following reasons: —(2) the jury's answers to special issues 4 and 5 are contrary to the great weight and overwhelming preponderance of the evidence and, in any event as a matter of law, plaintiff is entitled to a new trial." This assignment is sufficient to comply with Rule 321, Texas Rules Civil Procedure. *Hardy v. CPI Sales, Inc.*, 511 S.W.2d 89. We have held a similar assignment of error insufficient to form the basis for a point of error on appeal asserting that the jury's verdict is contrary to the great weight and preponderance of the evidence. *Hardy v. CPI Sales, Inc.*, 511 S.W.2d 89 (Tex.Civ.App. —Houston [1st. Dist.] 1974, no writ history).

By order of the Supreme Court of Texas entered July 11, 1977, Rule 324, T.R.C.P. was amended effective January 1, 1978. The rule now provides that a complaint that one or more of a jury's findings have insufficient support in the evidence, or are against the overwhelming preponderance of the evidence as a matter of fact, may be presented for the first time on appeal.

While the briefs in this case were filed prior to the effective date of the amendment to Rule 324, supra, we are bound by it in determining the sufficiency of the point of error. As a general rule, in the absence of an expressed intention to the contrary, procedural rules adopted by the Supreme Court are applied to pending litigation in that subsequent steps in the case are controlled by the new rule. *Brooks v. Texas Employers Insurance Association*, 358 S.W.2d 412 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.).

From the statement and argument in the appellant's brief under its single point of error, it is clear that the appellant contends that the answers made by the jury to the damage issues are contrary to the great weight and preponderance of the evidence. We will consider this point of error.

The jury found that Jetton's Greenway Plaza Cafeteria served Annie Cavitt unwholesome food on February 12, 1974. It found that she suffered injuries or aggravation of prior physical ailments as a result thereof, and that the serving of unwholesome food was a producing cause of the injuries or the aggravation. In answer to special issue No. 4, the jury found $0.00. This issue reads:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Annie Cavitt for her injuries, if any, would you find from a preponderance of the evidence resulted

from the occurrence in question? You may consider the following elements of damage, if any, and none other.

(a) Physical pain and mental anguish in the past.

(b) Physical pain and mental anguish which, in reasonable probability, she will suffer in the future."

The appellee lays stress on the difference in the wording of the issue on damages from the language found in the liability issue. Appellee says the jury might well have found that the serving of unwholesome food was the producing cause of an aggravation of a prior physical ailment without finding that any sum of money was necessary to compensate the appellant for her injury resulting from the occurrence.

■ A person is injured if he receives damage or harm to the physical structure of his body. Such damage or harm includes aggravation of any previously existing disease or condition by reason of such damage or harm to the physical structure of the body. See definition of the term "injuries" in Texas Pattern Jury Charges, § 11.01, page 245. Ordinarily and primarily the word "injury" means damage or hurt done to or suffered by a person or thing. *Lyle v. Waddle*, 144 Tex. 90, 188 S.W.2d 770 (1945).

■ The phrase "physical structure of the body" must refer to the entire body, not simply to the skeletal structure or to the circulatory system or to the digestive system. Where an emotional shock results in objective symptoms or an impairment of use or control of physical structures of the body, an injury has been suffered. *Bailey v. American General Insurance Co.*, 154 Tex. 430, 279 S.W.2d 315 (1955).

The jury found that the plaintiff suffered an injury or an aggravation of a previous condition. Under the evidence in this case, we must conclude that the terms are synonymous. The question therefore is whether or not the injury sustained by the plaintiff requires that money damages in some amount be awarded.

Annie Ruth Cavitt, the plaintiff, has a Bachelor of Science Degree from Texas Southern University and has completed 45 hours of work in psychology toward a Master's Degree. She had been employed at the Riverside General Hospital as a counselor in connection with a drug abuse program. For about one year prior to February 12, 1974, she had been treated by a Dr. Gatoura for stomach trouble. On February 12, she went to Jetton's Cafeteria with Dr. Matthew N. Cooper for dinner. While she was eating her dessert, she noticed a roach embedded in it. It was her testimony that she immediately became sick and vomited into her napkin. After Dr. Cooper called the attention of the manager of the cafeteria to the roach in the apple strudel, he apologized and did not charge Mrs. Cavitt for her meal. Mrs. Cavitt and Dr. Cooper went to Dr. Cooper's office, where she vomited again. Dr. Cooper gave her "a coke or something."

Nausea persisted for two days. Later the same night, she called Dr. Cooper regarding the vomiting and he wrote a prescription and turned it in for her. The next day when the vomiting persisted, she called Dr. Gatoura on the telephone, but she did not go to his office for an examination. Some months later, she saw Dr. Oliver C. Hunter who treated her for a nervous stomach. After February 12, she continued to see Dr. Cooper about her problem.

As a result of the incident at the restaurant, her eating habits changed and she lost a lot of weight. She found that she was unable to eat when she was out in company which was very embarrassing to her. She had a nervous stomach condition before the incident at the cafeteria and she continued being sick afterwards. She did not eat properly and ended up in the hospital again. On cross examination, she admitted that she saw Dr. Hunter about a year after the incident and did not recall whether she mentioned the cafeteria incident to him or not.

Dr. Cooper also testified. He has a Bachelor of Education Degree from Western Illinois State Teachers College, a Master of Arts Degree from the University of Illinois and a Ph.D. Degree from New York Uni-

versity. His field was psychology and he was a member of both the American Psychological Association and the Texas Psychological Association. He is a professor at Texas Southern University in the Department of Psychology. He is also staff psychologist at the Riverside General Hospital, Drug Abuse Clinic. He is licensed to practice as a psychologist in the State of Texas.

Dr. Cooper met Mrs. Cavitt while she was enrolled in a course which he was teaching. Prior to the cafeteria incident, he had been treating her for certain personal problems and also for her inability to eat properly. He saw her vomiting at the table in the cafeteria and saw the roach in her dessert. He testified that Mrs. Cavitt was almost in a state of shock immediately after the incident. He testified that she again vomited when they reached his office. He testified that he saw her some ten times following that in connection with her condition. He charged her $25.00 each session, and billed her for $250.00. He testified that, in his opinion, she suffered a mental depression as a result of the incident.

He testified that the principle difference between a psychologist and a psychiatrist is that the psychiatrist is qualified to prescribe medicine and has graduated from a medical school. He did not keep written files on his patients. Mrs. Cavitt worked with him in the hospital. Depression is a sort of neurosis or a component of neurosis. He treated Mrs. Cavitt with Hypnosis.

The medical records of Dr. Gatoura relating to Mrs. Cavitt were introduced into evidence. These records show that Dr. Gatoura admitted her to Hermann Hospital on December 27, 1973, and that her chief complaint was of abdominal pain. The doctor's records reflect that he saw her in September of 1973 at which time she had stomach pain and felt sick. She told him that 45 minutes after she ate, she would feel pain. She was extremely nervous. She had lost 10 to 14 pounds within the last 2 months. The doctor saw her again on December 27, 1973, at which time she complained of severe stomach pains for the past week. She had vomited and had a poor appetite. The doctor saw Mrs. Cavitt on January 30, 1974; February 6, 1974 and February 27, 1974. There is no mention in his notes that he was informed of the roach incident.

The medical records of Dr. Oliver C. Hunter were also introduced. Mrs. Cavitt first saw him on February 20, 1975, her chief complaint at that time was abdominal pain. She told him that for "the past several months" she had increasing pain in her stomach. He admitted Mrs. Cavitt to St. Joseph's Hospital. His final diagnosis was "abdominal pain, etiology undetermined, acute gastroenteritis, etiology undetermined, treated improved. Moderate anxiety reaction, treated improved. Spastic Colitis, no evidence of active ulcerations or ulcers, treated improved."

During her hospitalization in December of 1973, she underwent an appendectomy. Other surgical procedures were carried out at the same time. The medical records of St. Joseph's Hospital reflect the history given to Dr. Hunter and the diagnosis which he made. The doctor noted that she had had two pregnancies without difficulty. He also noted that she was very apprehensive and anxious. He found obvious signs of recent weight loss.

There was no other testimony concerning the incident at the cafeteria. The "manager" did not testify although it appears that he might have been able to testify as to Mrs. Cavitt's claimed nausea. The appellee contends that Mrs. Cavitt's testimony was impeached by reason of the fact that Dr. Hunter's medical records contain no mention of the cafeteria incident, and that she did not seek treatment from Dr. Gatoura although he was treating her at the time. Appellee also calls attention to the fact that Dr. Cooper kept no records of his visits with Mrs. Cavitt and the treatment which he gave her. Appellee also stresses the fact that Dr. Cooper did not have Mrs. Cavitt treated by a neurologist or even talk with her treating physician.

We are unable to agree that the testimony of Mrs. Cavitt or Dr. Cooper was seriously impeached. While Dr. Cooper was friendly with Mrs. Cavitt and had known

her for some period of time prior to the incident, he had no financial interest in the outcome of the suit. It is undisputed in the record that Mrs. Cavitt saw a roach in the food she had been eating and immediately suffered nausea, and that this condition persisted for a period of time. There was testimony that for a period of time she was unable to eat in public, a condition that resulted in embarrassment. The record establishes the fact of injury and resulting mental anguish. The uncontradicted evidence discloses that she suffered some damage. The amount of damages to be awarded is peculiarly within the province of the jury, but the jury may not disregard the fact of injury and find no damage. *Missouri, K. and T. R. Co. of Texas v. Lightfoot*, 48 Tex.Civ.App. 120, 106 S.W. 395 (—1907, writ ref'd); *Sutton Motor Company v. Crysel*, 289 S.W.2d 631 (Tex.Civ.App.—Beaumont 1956, no writ history); *Nye v. W & L Company, Inc.*, 519 S.W.2d 142 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.).

The judgment of the trial court is reversed and the cause remanded.