United States Court of Appeals,

Fifth Circuit.

No. 91-6149.

George W. WATKINS, et al., Plaintiffs,

v.

FIBREBOARD CORPORATION, et al., Defendants.

Lloyd G. BRANNEN, et al., Plaintiffs-Appellees,

v.

FIBREBOARD CORPORATION, et al., Defendants,

Pittsburgh Corning Corporation, Defendant-Appellant.

Isaac PRICE, Jr., et al., Plaintiffs-Appellees,

v.

FIBREBOARD CORPORATION, et al., Defendants,

Pittsburgh Corning Corporation, Defendant-Appellant.

Harold BARRON, et al., Plaintiffs-Appellees,

v.

FIBREBOARD CORPORATION, et al., Defendants,

Pittsburgh Corning Corporation, Defendant-Appellant.

July 1, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, WISDOM, and WIENER, Circuit Judges.

WISDOM, Circuit Judge:

This is an unusual case but not one that causes the court to break new ground. We are *Erie*-bound—the substantive law of Texas prevails.[1] This Court has spoken earlier on the basic issue: Is there recovery under the law of Texas for mental anguish as part of the injury produced by exposure to asbestos products of plaintiffs who may not have, or probably will not have, asbestosis

---

[1]*Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

or cancer?  *Dartez v. Fibreboard Corporation.*[2]  The jury's answers to interrogatories were not necessarily inconsistent.  In this respect, Rule 49 of the Federal Rules of Civil Procedure is helpful.  In the very restricted circumstances of this case we hold that the trial judge and the jury did not commit reversible error.

## I.

The plaintiffs, George Watkins, Lloyd Brannen, Isaac Price, Jr., and Harold Barron, workers exposed for many years to asbestos-containing products, separately filed suit against certain asbestos companies.[3]  In answer to special interrogatories the jury found that the plaintiffs had been exposed to the defendants' asbestos products but that the exposure had not been a producing cause of any asbestos-related disease.  The jury found, however, that as a result of the exposure each of the plaintiffs had suffered "pain, mental anguish, and loss of capacity for enjoyment of life in the future" (collectively, "mental anguish").  The defendants moved for a judgment in their favor based on the jury's finding that the plaintiffs failed to show that the exposure to asbestos had been a producing cause of any *disease.*  The trial judge denied the motion and awarded damages to the plaintiffs as determined by the jury.  Only Pittsburgh-Corning appealed.

## II.

Shortly after plaintiffs filed suit, the district court consolidated the actions and bifurcated the trial.  In July 1987 a jury found that the defendants' products were defective and unreasonably dangerous.  The second trial was to determine the effect of the exposure, particularly in terms of damages.

In the second trial, the plaintiffs produced evidence of pleural and parenchymal abnormalities, pain, and mental anguish.  The defendants' experts minimized the extent of the pleural thickening, discussed the probability that other causes than exposure to asbestos produced the pleural changes, and stated that cancer would "probably not" result in any of the cases.

[2]765 F.2d 456 (5th Cir.1985).

[3]Pittsburgh-Corning Corp., Owens-Corning Fiberglas Corporation, Fibreboard Corporation, GAF Corporation, Owens-Illinois, Inc.

After five days of trial, the district judge instructed the jury. In these instructions he included five special interrogatories which are contained here in the margin.[4] The interrogatories were

[4]

INTERROGATORY NO. 1-A

Do you find from a preponderance of the evidence that the plaintiff, George Watkins, was exposed to any asbestos containing product manufactured or sold by any of the following companies?

Answer "Yes" or "No" as to each company:

FIBREBOARD CORPORATION:
_____

GAF CORPORATION:
_____

OWENS-CORNING FIBERGLAS CORPORATION:
_____

OWENS-ILLINOIS, INC.:
_____

PITTSBURGH CORNING CORPORATION:
_____

If you have answered Interrogatory No. 1-A "Yes" as to any defendant, then answer Interrogatory No. 1-B as to each such defendant.

INTERROGATORY NO. 1-B

Do you find from a preponderance of the evidence that the exposure of plaintiff, George Watkins, to the asbestos containing products found by you in answer to Interrogatory No. 1-A was a producing cause of any asbestos related disease?

Answer "Yes" or "No" as to each defendant:

FIBREBOARD CORPORATION:
_____

GAF CORPORATION:
_____

OWENS-CORNING FIBERGLAS CORPORATION:
_____

OWENS-ILLINOIS, INC.:
_____

PITTSBURGH CORNING CORPORATION:

If you have answered Interrogatory No. 1-B "Yes" as to any defendant, then answer Interrogatory No. 1-C.

INTERROGATORY NO. 1-C

What percentage of George Watkins' asbestos related disease, if any, do you find from a preponderance of the evidence to have been caused by the products of the below listed defendants.

Answer by stating the percentage for any of the below listed defendants as to which you answered "Yes" for in Interrogatory No. 1-B, as to the defendants. The percentage you find must total 100 percent.

FIBREBOARD CORPORATION:      _____%

GAF CORPORATION:      _____%

OWENS-CORNING FIBERGLAS CORPORATION:      _____%

OWENS-ILLINOIS, INC.:      _____%

PITTSBURGH CORNING CORPORATION:      _____%

TOTAL      100%

INTERROGATORY NO. 1-D

What sum of money, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate George Watkins for his injuries resulting from exposure to asbestos containing products?

Answer separately in dollars and cents, if any, with respect to the following elements:

a. Pain, mental anguish, and loss of capacity for enjoyment of life in the past:

Answer: $_____

b. Pain, mental anguish, and loss of capacity for enjoyment of life in the future:

Answer: $_____

c. Future medical expenses:

Answer: $_____

d. Loss of earning capacity in the past:

identical in each case and the individual cases were identified as 1-A, 2-A, 3-A, and 4-A, starting with Watkins as 1-A, and so on. The jury answered interrogatory 1-A by finding that the plaintiff was exposed to asbestos. Having answered 1-A, the jury went on to 1-B, finding that the exposure was not "*a producing cause* of any asbestos related disease" (emphasis added). 1-B instructs the jury to answer 1-C if it has answered "Yes" as to any defendant. The jury disobeyed the trial judge by proceeding to 1-C, apportioning among the five defendants the percentage of the plaintiffs' asbestos related disease "caused" by the defendants' products. Interrogatory 1-D asked the jury to find what sum would compensate the plaintiff "for his *injuries* resulting from exposure to asbestos" (emphasis added). The interrogatory listed as two categories of "injuries": "(a) Pain, mental anguish, and loss of capacity for enjoyment of life in the past" and (b) "... for the future". The jury realized that either their answers to B and C were contradictory and that B and D also were contradictory or that the term "injuries" was broader than the term "disease".

---

Answer: $_____

e. Loss of earning capacity in the future:

Answer: $_____

INTERROGATORY NO. 1-E

Find from a preponderance of the evidence what sum of money, if paid now in cash, would fairly and reasonably compensate Ada Watkins for her loss of consortium and services, if any, resulting from her husband's asbestos related disease.

Consider the following elements of damage, if any, and none other:

a. Loss of consortium in the past.

b. Loss of consortium that, in reasonable probability, will be sustained in the future.

c. Loss of George Watkins' household services in the past.

d. Loss of George Watkins' capacity to perform household services that, in reasonable probability, will be sustained in the future.

Answer in dollars and cents:

ANSWER: $_____

Accordingly, "Jury Note One" inquired of the court: "If we say no to Question 1-B (no disease) may we award damages based purely on exposure, or must we agree that disease is present today?" The trial judge informed the jury in writing: "Answer 1-B and D independently". Before he sent this response to the jury, the trial judge asked counsel, "Do any of the attorneys have any objections to the court sending this response to the jury?" Counsel replied: "Plaintiff doesn't" and, from the other side, "None of the defendants do either, Your Honor". (Tr. 1058).

III.

Pittsburgh-Corning argues that the judgment should be set aside, because the jury answered "No" to the question put by B as to "producing cause". Similarly, the answer to the D must be wrong because without causation there can be no damages.

When a jury returns answers to interrogatories that seemingly conflict, the court must attempt to reconcile the answers, if possible, to validate the jury's verdict.[5] "The touchstone in reconciling apparent conflict is whether "the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted.' "[6]

The answers to interrogatories must be considered in the light of the trial judge's instructions. Here the trial judge was careful to supply the necessary background for the questions and answers. The trial judge stated:

> one of the issues which you will be called upon to decide is whether exposure to any or all of the companies' asbestos-containing products was a producing cause of disease in the plaintiffs. In this connection, the term "producing cause" means an efficient, exciting, or contributing cause, which, in an actual and continuous sequence, produced the diseases *or damages* complained of. This fact does not mean that the law recognizes only one producing cause of a disease or damage, consisting of only one factor or thing or the conduct of only one person. On the contrary, many factors or things may operate at the same time, either independently or together, to produce *disease, injury or damage,* and in such a case, each exposure may be a producing cause. (emphasis added.) (Tr. 1035)

It is fair to say that the jury assumed from this language that "disease" and "injury" are different. They are different.

---

[5]*Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962).

[6]*White v. Grinfas,* 809 F.2d 1157, 1161 (5th Cir.1987) (internal citation omitted).

Continuing and consistent with this interpretation, the trial judge then said:

> In assessing the damages that would fairly and reasonably compensate each plaintiff, you shall consider the physical pain, the *mental anguish,* the *loss of capacity for enjoyment of life,* and the *loss of capacity to work* that each plaintiff has sustained in the past, and which that plaintiff will, in reasonable probability, *sustain in the future ...*
>
> A plaintiff is entitled to recover compensation for *mental anguish,* proximately caused by his asbestos exposure, even if such distress *arises from fear of diseases that are a substantial concern but not medically probable.* The fact that the evidence may not establish a reasonable medical probability that the plaintiff will develop an asbestos-related disease is *relevant to the jury's determination of the reasonableness of the anguish he feels* and the amount of compensation to which he may be entitled. (emphasis added.) (Tr. 1037) (*See infra* note 25.)

We conclude that a rational juror answering the interrogatories in the light of the law, as stated by the trial judge, could find here that a plaintiff may recover compensation for mental anguish, "proximately caused by his asbestos exposure, even if such distress arises from fear of diseases that are a substantial concern but not medically probable". The medical probability that the plaintiff will develop an asbestos-related disease bears on the "reasonableness of the anguish he feels and the amount of compensation to which he may be entitled". That is the law in Texas. That is what the jury undoubtedly understood when it found that the plaintiffs were entitled to recover for mental anguish, even though a plaintiff did not have asbestosis and it was not medically probable that his exposure would result in asbestosis.

Although it is logical that the jury distinguished "disease" from "injury", there is no causation question with regard to the award of damages for injuries in Interrogatory D. The defendants' attorneys, however, expressed themselves as satisfied, when the trial judge asked if there were any objections to his statement that the jury should consider Interrogatories B and D independently.

When a basic issue is omitted in the instructions in this way and there is no objection, Rule 49 of the Federal Rules of Civil Procedure comes to the aid of justice. In pertinent part the rule provides:

> If in so doing the court [in the instructions to the jury] omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

This Court has on many occasions resorted to rule 49 to validate a jury verdict. In *Old*

*Security,*[7] we stated that we would have found causation as an omitted issue if the trial judge had simply granted judgment on the special verdict, which is precisely what occurred in the instant case. In *Fredonia,*[8] we held that the intent element of fraud is "deemed" admitted although the jury made no specific finding on this issue. In *Smallwood,*[9] we approved a finding of culpability in a 10b-5 securities case, although once again the jury did not make a specific finding on culpability. In *J.C. Motor,*[10] we inferred negligence although "no special issues on [a party's] individual negligence or conduct were specifically submitted to the jury". These are but a few of the many cases in which we have "deemed" admitted an element of a cause of action even though the jury did not specifically answer an interrogatory concerning this element. As both Moore and Wright and Miller note, this is imperative if a special verdict—one that uses interrogatories—rather than a general verdict is to continue to be employed.[11] Otherwise there would always be the danger that the special verdict would be set aside because the jury had failed to make a particular finding whereas a general verdict could not be challenged on this grounds. Indeed, before the adoption of the Federal Rules, the United States Supreme Court held that if the jury failed to make a finding on a material issue, the judgment could not stand.[12] The Court set aside the special verdict and ordered a new trial. This result led one observer to comment that, "Because of this hazard, the special verdict met with little use...."[13] With the adoption of the Federal Rules, this hazard was avoided. Causation is an omitted issue under Rule 49.

IV.

---

[7]*Wood v. Old Security Life Insurance Co.,* 643 F.2d 1209, 1215 (5th Cir.1981).

[8]*Fredonia Broadcasting Corp., Inc. v. RCA Corp.,* 481 F.2d 781, 796 (5th Cir.1973).

[9]*Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 606 (5th Cir.1974) *cert. denied* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974).

[10]*J.C. Motor Lines, Inc. v. Trailways Bus System,* 689 F.2d 599, 602-03 (5th Cir.1982).

[11]Moore at ¶ 49.03[4]. Wright and Miller at § 2507.

[12]*Hodges v. Easton,* 106 U.S. 408, 1 S.Ct. 307, 27 L.Ed. 169 (1882).

[13]Stinson, *Special Verdicts and Interrogatories,* 7 Mo.L.Rev. 148 (1942).

Early in this century, the North Carolina Supreme Court made the obvious observation that the probability of developing cancer "must necessarily have a most depressing effect upon the injured person. Like the sword of Damocles, he knows not when it will fall."[14] Since then the courts of the several states have encountered several strands of cases dealing with the fear of contracting a disease. A generation ago, courts considered fear of cancer from exposure to radiation.[15] Recently, the Tennessee Court of Appeals held that a woman could recover for her reasonable fear of contracting AIDS when she stuck her hand into a container which she thought contained paper towels but which actually contained contaminated needles, even though she could not prove that she had been exposed to the AIDS virus.[16] Over the last decade, the fear of contracting an asbestos related disease has frequently been before the courts.[17]

Although Pittsburgh-Corning argues that Texas does not permit recovery for future mental anguish without a present asbestos related disease, its reliance on *Boyles v. Kerr,*[18] which overruled in part *St. Elizabeth Hospital*[19] is misplaced. Pittsburgh-Corning is correct that Texas law does not allow recovery for negligently inflicted emotional distress as an independent cause of action.[20] But the plaintiffs have never asserted that there was an independent right to recover for negligently inflicted emotional distress or mental anguish. Moreover, this is a products liability case.

The plaintiffs should have made clear that they distinguished asbestosis or an asbestos-related *disease* from an *injury* such as cancerphobia or mental anguish for which the exposure to asbestos was the producing cause. This is a basic issue in this case, articulated to some extent in the trial

---

[14]*Alley v. Charlotte Pipe & Foundry Co.,* 159 N.C. 327, 74 S.E. 885, 886 (1912).

[15]*Anderson v. Welding Testing Laboratory, Inc.,* 304 So.2d 351 (La.1974).

[16]*Carroll v. Sisters of St. Francis Health Services Inc.,* 61 U.S.L.W. 2291, 1992 WL 276717 (1992).

[17]See cases listed in 6 ALR5th § 10 (1992).

[18]1993 WL 141516, --- S.W.2d ---- (Tex. December 2, 1992).

[19]*St. Elizabeth Hospital v. Garrard,* 730 S.W.2d 649 (Tex.1987).

[20]*Boyles v. Kerr.*

judge's general instructions, but not clearly articulated by either party, except perhaps by the plaintiffs/appellees on appeal. Both the Texas Appellate Court in *Fibreboard v. Pool*[21] and this Court interpreting Texas law in *Dartez v. Fibreboard*[22] have addressed this issue and stated that a plaintiff may recover for mental anguish even if he does not currently suffer from an asbestos related disease.

In *Fibreboard v. Pool,* a Texas Court of Appeals found no error in an instruction that read in part, "If you do not find that [the plaintiff] will in reasonable probability suffer a cancer or mesothelioma, you may consider and compensate the plaintiff for any mental anguish he has suffered or will suffer in the future from his reasonable fear, if any, of cancer and mesothelioma he might suffer from his asbestos exposure, distinct from any fear of cancer which all persons might have."[23] The jury need not find any current asbestos related disease and may believe that the plaintiff will never suffer from an asbestos related disease, yet still award damages for the fear of one day suffering from an asbestos related disease so long as that fear is reasonable in light of the nature of the exposure. The Supreme Court of Texas granted a writ and heard oral argument, but dismissed the writ as improvidently granted.[24]

A few years before *Pool,* this Court arrived at the same conclusion reached by the Texas courts, based on its analysis of Texas law. In *Dartez v. Fibreboard,* this Court said: "Under Texas law [the plaintiff] is entitled to compensation for mental anguish proximately caused by his asbestos exposure, even if such distress arises from fear of diseases that are a substantial concern, but not medically probable. The fact that the evidence does not establish a reasonable medical probability that Dartez will develop either disease is relevant to the jury's determination of the reasonableness of the anguish he feels and the amount of compensation to which he is entitled."[25]

---

[21]813 S.W.2d 658 (Tex.App.—Texarkana 1991, writ denied).

[22]765 F.2d 456 (5th Cir.1985).

[23]*Pool* at 675 n. 2.

[24]Error granted (April 29, 1992), order withdrawn; error denied (Nov. 11, 1992), rehearing of writ of error overruled (Dec. 9, 1992).

[25]*Dartez* at 468. The judge read these exact words as part of the jury instructions, although he substituted the words "A plaintiff" for "Under Texas law [Dartez]" (Tr. 1037).

In most of the cases that have permitted recovery, the plaintiffs had *worked* as asbestos insulators and pipefitters.[26] They had torn out asbestos, installed asbestos; they had worked in asbestos dust. They also had some evidence of pleural or parenchymal scarring.

In this case, the plaintiffs' and the defendants' experts disagreed as to the extent of any pleural or parenchymal abnormalities. Subject to our expert testimony jurisprudence,[27] the jury which hears these conflicting experts' opinions should decide whether the fear is reasonable. As our late colleague, Judge Tate, wrote in a radiation burn case, "While to a scientist in his ivory tower the possibility of cancerous growth may be so minimal as to be untroubling, we are not prepared to hold that the trier of fact erred in finding compensable this real possibility to this worrying workman...."[28]

The judgment in this case was consistent with Texas law and this Court's understanding of Texas law as expressed in *Dartez*.

V.

There is no merit to the contention that Pittsburgh-Corning's product was not unreasonably dangerous, because of the lack of friability. At the first stage of this bifurcated trial, the jury decided that the product was unreasonably dangerous. At the second stage Pittsburgh-Corning had ample opportunity to present evidence that its product was not used or was incapable of being used in such a way as to release asbestos fibers into the respirable air. Indeed, on direct examination all four plaintiffs mentioned that Unibestos was different from the other products. This the jury could consider[29] in determining the reasonableness of the asbestos worker's fear of contracting asbestosis and cancer as a result of being exposed to the alleged non-friable asbestos products of Pittsburgh-

---

[26]*See e.g. Lavelle v. Owens-Corning Fiberglas Corp.,* 30 Ohio Misc.2d 11, 507 N.E.2d 476 (1987) (settled) and *Owens v. Lac D'Amiante Du Quebec Ltee,* 1987 WL 13327, 1987 US Dist LEXIS 5961 (E.D.Pa).

[27]*See Christophersen v. Allied-Signal Corp.,* 939 F.2d 1106 (5th Cir.1991) (en banc) *cert. denied* --- U.S. ----, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992).

[28]*Anderson* at 353.

[29]The jury did perhaps consider this as it assessed the lowest percentage of fault with regard to Watkins (12.5%), the second lowest with regard to Brannen and Barron (15% in each case), and the same percentage as the other defendants with regard to Price (20%).

Corning.

* * *

We AFFIRM the judgment of the district court.