**Costas VERINAKIS and Efstratia Verinakis, Appellants,**

v.

**MEDICAL PROFILES, INC., American Service Bureau, Inc., and American Service Bureau, Inc., d/b/a ASB Meditest, Appellees.**

No. 14–96–01140–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 30, 1998.

Rehearing Overruled March 4, 1999.

---

Timothy F. Lee, Don Fogel, Roy Alan Camberg, Houston, for appellants.

Michael D. Hudgins, Mark T. Phelps, Houston, Charles T. Frazier, Dallas, for appellees.

Before Justices YATES, EDELMAN, and O'NEILL.

## MAJORITY OPINION

LESLIE BROCK YATES, Justice.

Appellants, Costas and Efstratia Verinakis, appeal from a summary judgment in favor of appellees, Medical Profiles and Meditest. In two points of error, the Verinakises challenge the summary judgment on the grounds that (1) they pled and proved a traditional negligence cause of action, and (2) Medical Profiles and Meditest did not establish, as a matter of law, their entitlement to summary judgment. We affirm in part, and reverse and remand in part.

### I. BACKGROUND AND PROCEDURAL HISTORY

In August, 1993, Costas Verinakis applied for life insurance with Ohio Life Insurance Company. As part of the application process, Ohio Life required Costas to submit to a blood test. Ohio Life contracted with Meditest, a paramedical service company, to conduct the test. Meditest, in turn, arranged for Medical Profiles, a local independent contractor, to perform the test. W.J. Garrard, who worked for Medical Profiles, took a specimen of Costas's blood and prepared it for testing. Medical Profiles shipped the specimen to Risk Assessment Systems. Risk Assessment Systems tested the blood in the test tube labeled with Costas's identification number and found it was positive for human immunodeficiency virus (HIV).

In September, 1993, Ohio Life informed Costas that his application had been rejected but did not specify the reason for the rejection. In late October, the City of Houston Health Department notified Costas that his blood had tested positive for HIV. The City Health Department retested Costas's blood for HIV several times thereafter. Each test indicated that he was HIV negative. Notwithstanding the negative test results, Houston health officials were not absolutely sure Costas was HIV negative until December 19, 1993. Soon thereafter, the City Health Department informed Costas that he was not HIV positive.

Costas subsequently filed suit against Medical Profiles and Meditest for negligence, negligent representation, negligent hiring and supervision, defamation, invasion of privacy, insurance code violations, violations of the Deceptive Trade Practices Act (DTPA), and intentional infliction of emotional distress. Efstratia sued the same parties for loss of consortium. Medical Profiles and Meditest moved for summary judgment on all of the Verinakises' claims, and the trial court granted the motions. The trial court severed the judgments on July 22, 1996. On appeal, the Verinakises challenge the granting of summary judgment on their claims of negligence, negligent hiring and supervision, DTPA violations, intentional infliction of emotional distress and loss of consortium.

## II. STANDARD OF REVIEW

A movant for summary judgment has the burden to show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c). To be entitled to summary judgment, a defendant must either (1) conclusively negate at least one essential element of each of the plaintiff's causes of action, or (2) conclusively negate at least one essential element of an affirmative defense to each claim. *See Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

In reviewing a summary judgment, an appellate court takes evidence favorable to the non-movant as true and indulges all reasonable inferences in the nonmovant's favor. *See id.* An appellate court may affirm a summary judgment on any of the movant's theories which has merit. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 627 (Tex.1996).

## III. NEGLIGENCE

In their first point of error, the Verinakises contend the trial court erred in granting summary judgment because Meditest and Medical Profiles failed to prove their entitlement to summary judgment. In their eighth amended original petition, the Verinakises asserted, among other claims, that due to Medical Profiles's and Meditest's negligence in collecting and processing his blood for testing, Costas suffered mental anguish from being misdiagnosed as HIV positive. Meditest and Medical Profiles argued in their motions for summary judgment that the Verinakises could not recover mental anguish damages because Texas law requires a physical injury to recover mental anguish damages caused by a party's negligence and Costas suffered no compensable physical injury. Meditest and Medical Profiles further argued the Verinakises could not recover mental anguish damages because Texas does not recognize a cause of action that permits recovery of damages for mental anguish suffered from fear of developing acquired immune deficiency syndrome (AIDS).

### A. Physical Injury and Mental Anguish

On appeal, the Verinakises contend that Medical Profiles and Meditest are not entitled to summary judgment because the Verinakises proved a viable claim of ordinary negligence in their pleadings and response to the motions for summary judgment. The Verinakises claim Texas does not require proof that a plaintiff suffer a physical injury to recover mental anguish damages on a claim of ordinary negligence. The Verinakises further claim that even if Texas required a physical injury, they presented proof that Costas suffered a physical injury as a result of Meditest's and Medical Profiles's negligence.

Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish. *See Boyles v. Kerr,* 855 S.W.2d

593, 597 (Tex.1993). Although negligently inflicted anguish may be an element of recoverable damages when the defendant violates some other duty to the plaintiff, "[f]or many breaches of legal duties, even tortious ones, the law affords no right to recover for resulting mental anguish." *City of Tyler v. Likes,* 962 S.W.2d 489, 494 (Tex.1997). Likewise, there are few situations in which a claimant who is not physically injured by the defendant's breach of a duty may recover mental anguish damages. *See Motor Exp., Inc. v. Rodriguez,* 925 S.W.2d 638, 639 (Tex.1996). Nevertheless, in those cases where damages for mental anguish are recoverable, Texas no longer requires a physical manifestation of mental anguish. *See Likes,* 962 S.W.2d at 495. The plaintiff, however, must produce direct evidence of the nature, duration, and severity of the mental anguish, establishing a substantial disruption in his or her daily routine to be entitled to mental anguish damages. *See id.* (quoting *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995)).

■ Texas authorizes mental anguish damages as an element of recoverable damages in the following categories of cases: (1) as the foreseeable result of a breach of duty arising out of certain special relationships, such as the relationship between a physician and a patient; (2) for some common law torts that generally involve intentional or malicious conduct such as libel and, by analogy, for violations of certain statutes such as the DTPA; and (3) in virtually all personal injury cases where the defendant's conduct causes serious bodily injury. *See id.* at 494–96. Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, Texas permits recovery for mental anguish in only a few cases such as suits for wrongful death or actions by bystanders who witness a close family member's serious injury. *See id.* at 496.

■ In this case, the Verinakises assert no claim that would support a recovery of mental anguish damages without a showing of serious bodily injury. The Verinakises do not claim a special relationship with Meditest or Medical Profiles nor make a claim of wrongful death or a bystander injury, which would give rise to mental anguish damages.[1] Instead, the Verinakises assert an ordinary negligence claim based on the breach of Medical Profiles's and Meditest's duty to use reasonable care in collecting and processing Costas's blood for testing. Because they asserted an ordinary negligence claim, the Verinakises must show that Costas suffered a serious bodily injury in order to recover on their mental anguish claim. *See id.* at 465–96.

■ The Verinakises contend Costas suffered physical and mental ailments resulting from his emotional distress. "[W]hen a defendant's negligence causes a mental shock which produces a serious bodily injury, the defendant is liable for that injury provided it was foreseeable [citations omitted], and mental anguish is one element of damages just as it would be for any other serious injury." *Id.* at 495–96 (citing cases where the plaintiff suffered brain deterioration after almost being struck by a bus and where plaintiff miscarried after witnessing violent altercation); *see also Cavitt v. Jetton's Greenway Plaza Cafeteria,* 563 S.W.2d 319, 323–24 (Tex.Civ. App.—Houston [1st Dist.] 1978, no writ) (holding plaintiff suffered physical injury of severe and persistent nausea and mental anguish after finding a roach in her food). In his deposition, Costas said he became physically sick after being told he was HIV positive and had to sit down. He had sweating spells connected with anxiety. Costas also complained that he was depressed, withdrawn, suffered from insomnia and contemplated suicide. Although foreseeable, Costas's complaints do not rise to the level of serious bodily injury necessary to support the recovery of mental anguish damages as contemplated in *Likes.* According to one of the physicians associated with the City Health Department, Costas's symptoms were typical of those grieving after having been diagnosed with HIV. Historically, Texas courts have defined mental anguish to in-

---

1. Although the Verinakises asserted claims of defamation and violations of the DTPA in their eighth amended original petition, they assert no claim of mental anguish damages on the basis of these causes of action in this point of error.

clude the mental sensation of pain resulting from grief. *See Parkway Co.*, 901 S.W.2d at 444.

In the alternative, the Verinakises allege that Costas suffered bruising and pain as a result of repeatedly having blood drawn as part of the HIV follow-up. Again, this minor physical injury is not the serious bodily injury that can form the basis for recovering mental anguish damages. *See Likes*, 962 S.W.2d at 496. Because Meditest and Medical Profiles defeated the damages element of the Verinakises' negligence claim, they are entitled to summary judgment on the negligence claim.

## B. Negligent Misdiagnosis

The Verinakises, nevertheless, argue that Meditest and Medical Profiles are not entitled to summary judgment because Texas jurisprudence allows a plaintiff to recover for negligent misdiagnosis when the plaintiff submits to unnecessary medical treatment without exposure to a disease and to recover for fear of a disease or death. In support of their argument, the Verinakises rely on *Dougherty v. Gifford*, 826 S.W.2d 668 (Tex.App.—Texarkana 1992, no writ). In *Dougherty*, the Texarkana Court of Appeals held a patient could recover for chemotherapy, irradiation, and mental anguish damages after being misdiagnosed with malignant cancer. *See id.* at 672. The pathologist was held liable for medical malpractice after the court found he breached the physician-patient relationship as a matter of law. *See id.* at 675. No such relationship exists between Costas and Medical Profiles or Meditest.

Additionally, the Verinakises argue recovery should be allowed in their case because Texas courts have allowed recovery for mental anguish damages when a plaintiff is exposed to a substance capable of causing disease and the fear is reasonable. *See, e.g., Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 675 (Tex.App.—Texarkana 1991, writ denied) (recovery for mental anguish permitted where fear of contracting cancer was reasonable in light of actual exposure to asbestos); *Watkins v. Fibreboard Corp.*, 994 F.2d 253, 258 (5th Cir.1993) (award of mental anguish damages sustained where fear of cancer

based on actual exposure to asbestos); *see also Gamer v. Winchester*, 110 S.W.2d 1190, 1193 (Tex.Civ.App.—Fort Worth 1937, writ dism'd) (where the court permitted recovery for mental anguish as a result of fear of contracting rabies, lockjaw and blood poisoning following a dog attack where actual bodily injury is shown to have occurred). We do not find these cases relevant or persuasive because the Verinakises do not claim the diagnostic testing or the resulting misdiagnosis exposed Costas to the AIDS virus, or that Costas feared the misdiagnosis exposed him to the AIDS virus. Instead, the Verinakises claim Costas suffered mental anguish because he thought he was HIV positive when he actually was HIV negative due to Medical Profiles's and Meditest's negligence in collecting and processing his blood sample.

The Verinakises also cite to other jurisdictions which have allowed recovery for plaintiffs misdiagnosed with HIV. *See e.g., M.M.H v. U.S.*, 966 F.2d 285, 291 (7th Cir.1992) (plaintiff misdiagnosed with HIV virus allowed to recover mental distress damages; plaintiff's depressed cellular immunity, insomnia, and suicide attempts satisfied personal injury requirement); *Chizmar v. Mackie*, 896 P.2d 196, 205 (Alaska 1995) (patient misdiagnosed with HIV allowed to recover for damages from serious emotional distress from physician's breach of duty to refrain from activity which presented a foreseeable and unreasonable risk of causing emotional distress). Again, we do not find these cases relevant or persuasive because, in each case, recovery was based on the breach of a legal duty owed to a patient by a physician, which is not present in this case. *See Krishnan v. Sepulveda*, 916 S.W.2d 478, 481, 482 (Tex.1995). Moreover, other courts have not allowed recovery when presented with facts analogous to the present case. *See, e.g., Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 652 N.E.2d 664, 670 (Ohio 1995) (patient not allowed to recover for false diagnosis of HIV because Ohio does not recognize a claim for negligent infliction of serious emotional distress where the distress is caused by the plaintiff's fear of a nonexistent physical peril); *R.J. v. Humana of Fla., Inc.*, 652 So.2d 360, 363–64 (Fla.1995) (patient misdiagnosed

with HIV could not recover for emotional distress damages because intangible mental injuries are insufficient to meet the physical injury required under impact rule).

Because we find that Meditest and Medical Profiles are entitled to summary judgment on the Verinakises' negligence claim, we need not address whether the Verinakises' claim for negligent misdiagnosis should be treated as a "fear of AIDS" case. Accordingly, we overrule the Verinakises' first point of error.

## IV. OTHER CLAIMS

In their second point of error, the Verinakises contend the trial court erred in granting the motions for summary judgment on their causes of actions for negligent hiring and supervision, DTPA violations, intentional infliction of emotional distress and loss of consortium.

### A. Vicarious Liability & Negligent Hiring and Supervision

■ The Verinakises argue that fact issues exist regarding Meditest's negligence in hiring and supervising Medical Profiles and Garrard and regarding Medical Profiles's vicarious and direct liability for Garrard's negligence. The Verinakises asserted in their eighth amended original petition that Medical Profiles was vicariously liable for Garrard's actions and directly liable for negligently hiring and supervising Garrard. In its motion for summary judgment, Medical Profiles argued that it owed no duty to the Verinakises under either theory because Garrard was an independent contractor, and not an employee. In the alternative, Medical Profiles argued that the Verinakises "have not and cannot introduce any direct evidence" that the hiring of Garrard proximately caused their damages. In support of its alternative argument, Medical Profiles attached Garrard's deposition testimony that he became a blackout drinker after his employment with Medical Profiles ceased.

The Verinakises also asserted that Meditest breached a legal duty to investigate the background of Medical Profiles and Garrard before hiring them and a legal duty to exercise care and diligence in supervising Medical Profiles and Garrard. Meditest contended in its motion for summary judgment that it owed no duty to the Verinakises because its relationship with Medical Profiles was contractual.

■ Generally, there is no duty to control the conduct of third persons unless a special relationship exists between the actor and the third person that imposes a duty upon the actor to control the third person's conduct. *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 720 (Tex.1995); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990) (citing RESTATEMENT (SECOND) OF TORTS § 315(a) (1965)). Special relationships giving rise to such a duty include the relationship between employer and employee and independent contractor and contractee, if the contractee retains the right to control the contractor's work. *See id.* (citing RESTATEMENT (SECOND) OF TORTS §§ 316–20 (1965)). Additionally, an employer may be vicariously liable for the tortious acts of its employee under the doctrine of respondeat superior. *See Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805, 807 (Tex.1980); *Leake v. Half Price Books, Records, Magazines, Inc.,* 918 S.W.2d 559, 563, (Tex.App.—Dallas 1996, writ). Respondeat superior imposes liability on the employer when the negligence of its employee, acting in the scope of his employment, is the proximate cause of another's injury. *See DeWitt v. Harris County,* 904 S.W.2d 650, 654 (Tex. 1995); *Leake,* 918 S.W.2d at 563.

■ A claim of negligent hiring and supervision, on the other hand, is based on an employer's direct negligence instead of the employer's vicarious liability for the torts of its employees. *See Doe v. Boys Clubs of Greater Dallas, Inc.,* 868 S.W.2d 942, 950 (Tex.App.—Amarillo 1994), *aff'd,* 907 S.W.2d 472 (Tex.1995). Under the tort of negligent hiring and supervision, an employer who negligently hires an incompetent or unfit individual may be directly liable to a third party whose injury was proximately caused by the employee's negligent or intentional act. *See Golden Spread Council, Inc. No. 562 of Boy Scouts of America v. Akins,* 926 S.W.2d 287, 294 (Tex.1996). Under either theory, the duty of the employer or contractee extends

only to prevent the employee or independent contractor from causing physical harm to a third party. *See* RESTATEMENT (SECOND) OF TORTS § 315. Because Meditest and Medical Profiles established as a matter of law that Costas did not suffer a serious bodily injury giving rise to a recovery for mental anguish damages from the breach of any duty owed under a negligence cause of action, the trial court did not err in granting summary judgment on the Verinakises' claims for vicarious liability and negligent hiring and supervision.

## B. DECEPTIVE TRADE PRACTICES CLAIMS

■ Next, the Verinakises argue that Medical Profiles and Meditest failed to prove their entitlement to summary judgment on the ground that they did not knowingly violate the DTPA. To recover mental anguish damages under DTPA, in the absence of a resulting physical injury, a plaintiff must show that the defendants committed a willful tort, gross negligence, willful disregard, or a knowing violation of the statute. *See State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 435 (Tex.1995); *American Nat. Ins. Co. v. Paul,* 927 S.W.2d 239, 245 (Tex.App.— Austin 1996, writ denied); TEX. BUS. & COM. CODE ANN. § 17.46–17.50 (Vernon 1997).

■ Medical Profiles and Meditest moved for summary judgment on the ground that there was no evidence they knowingly violated the DTPA.[2] In a summary judgment case, the question is whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *See Gibbs v. General Motors, Corp.,* 450 S.W.2d 827, 828 (Tex.1970). The question is not whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action. *Id.* at 828. "In other words, a defendant is not entitled to summary judgment on the ground that there is 'no evidence' to support the nonmovant plaintiff's claims." *Lewis v. Skippy's Mistake Bar,* 944 S.W.2d 1, 5 (Tex.App.—Fort Worth 1996, no writ). Because Medical Profiles and Meditest failed to defeat an element of the Verinakises' DPTA claim, the trial court erred in granting summary judgment on that claim.

## C. Intentional Infliction of Emotional Distress

■ The Verinakises also maintain the trial court erred in granting summary judgment on their intentional infliction of emotional distress claim. Specifically, the Verinakises contend Medical Profiles's and Meditest's misdiagnosis of Costas constitutes extreme and outrageous behavior. To recover for intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *See Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). Extreme and outrageous conduct is conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994). Whether a defendant's conduct may reasonably be regarded as extreme and outrageous is a question of law. *See Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993).

■ Without citing to the record, Medical Profiles moved for summary judgment on the ground that its conduct was not outrageous or extreme as a matter of law. Medical Profiles also argued there was no evidence that it engaged in any wrongful conduct that was intentional and no evidence that its acts or omissions proximately caused the Verinak-

---

**2.** At the time the motions for summary judgment were filed, a defendant in a Texas state court was not entitled to summary judgment merely because there was "no evidence" to support the plaintiff's allegations. Effective September 1, 1997, Rule 166a of the Texas Rules of Civil Procedure was amended by adding paragraph (i), which expressly authorizes a trial court to grant summary judgment on the ground that there is no evidence of one or more essential elements of a claim or a defense on which an adverse party would have the burden of proof at trial. *See* TEX.R. CIV. P. 166a(i).

ises' damages. In short, Medical Profiles sought to raise a fact issue with regard to the Verinakises' claim instead of defeating an element of their intentional infliction of emotional distress claim. Because Medical Profiles failed to sustain its burden of proof, the trial court erred in granting summary judgment as to the Verinakises' claim that Medical Profiles intentionally inflicted emotional distress.[3]

On the other hand, Meditest argued its conduct was not extreme or outrageous because it did not perform Costas's blood testing but contracted it out to Medical Profiles. Specifically, Meditest argued that it was no more than a billing conduit by which Medical Profiles billed Ohio Life for collecting and processing lab work; therefore, its conduct could not be extreme or outrageous. Meditest's summary judgment proof consisted of excerpts from the deposition of Dayna Michelle Been, the owner of Medical Profiles. Been attested that Medical Profiles represented Meditest as the examining company in obtaining Costas's blood sample. She also stated that Meditest was the company through which Medical Profiles billed Ohio Life. Meditest also claimed that Been testified that Medical Profiles did not have any contact with Meditest until Meditest paid for the collection of the specimen. The exhibit, in which Been allegedly made this statement, however, is not in the record before this court. Nevertheless, the record supports Meditest's claim that it was no more than a billing conduit. Because contracting services to subcontractors and billing an insurance company for the services performed by a subcontractor do not constitute extreme or outrageous conduct, we find Meditest established its entitlement to summary judgment on the Verinakises' claim of intentional infliction of emotional distress.

The Verinakises offered no proof to controvert Meditest's proof; consequently, they failed to defeat Meditest's entitlement to summary judgment. Once the movant has established a right to summary judgment, the non-movant must expressly present any

reasons seeking to avoid the movant's entitlement, and must support the reasons with summary judgment proof to establish a fact issue. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 907 (Tex.1982). Therefore, the trial court properly granted summary judgment in favor of Meditest on the Verinakises' claim of intentional infliction of emotional distress.

### D. Loss of Consortium

Finally, the Verinakises contend Efstratia is entitled to recover mental anguish and loss of consortium damages. Under Texas law, a loss of consortium claim is derivative of physical injuries suffered by another. *See Motor Exp., Inc.*, 925 S.W.2d at 640; *Reagan v. Vaughn*, 804 S.W.2d 463, 468 (Tex.1990). Further, a spouse may not recover for loss of consortium absent a physical injury that is serious, permanent and disabling. *See Browning–Ferris Indus. Inc. v. Lieck*, 881 S.W.2d 288, 294 (Tex.1994). Because Medical Profiles and Meditest established as a matter of law that Costas did not sustain a serious physical injury, the trial court properly granted summary judgment on the Verinakises' loss of consortium claim.

### V. CONCLUSION

Because Meditest and Medical Profiles proved their entitlement to summary judgment with respect to the Verinakises' claims of negligence, negligent hiring and supervision, vicarious liability, and loss of consortium, and because Meditest proved its entitlement to summary judgment on the Verinakises' claim of intentional infliction of emotional distress, we overrule the Verinakises' second point of error as to those claims. Nevertheless, we sustain the Verinakises' second point of error with respect to their claim of DTPA violations against both Meditest and Medical Profiles, and their claim of intentional infliction of emotional distress against Medical Profiles.

Accordingly, we affirm the judgment of the court below as to the Verinakises' claims of

---

**3.** Because we have found that Medical Profiles failed to sustain its burden of proof, we express no opinion about whether there exists a fact issue

as to this claim or whether Medical Profiles conduct was not extreme or outrageous as a matter of law.

negligence, negligent hiring and supervision, vicarious liability, and loss of consortium, and intentional infliction of emotional distress as to Meditest. We reverse the judgment of the court below with respect to the Verinakises' claims of DTPA violations against both Medical Profiles and Meditest and their claim of intentional infliction of emotional distress against Medical Profiles and remand these causes for further proceedings.

O'NEILL, J., dissenting.

HARRIET O'NEILL, Justice, dissenting.

Because I believe the trial court did not err in granting summary judgment in favor of Medical Profiles on the Verinakises' claim for intentional infliction of emotional distress, I respectfully dissent. I otherwise concur in the majority opinion.