Opinion issued December 22, 2005 


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-01037-CV
__________
 
SID GARTON, Appellant
 
V.
 
LINDA POE ROCKETT, BELINDA BAKER, JAKE BENNETT, MARY
BRIGMAN, JOHNNY POE, BRYAN WALLEN, MARK POE, AND SCOTT
BAKER, Appellees
 

 
 
On Appeal from Probate Court No. 2
Harris County, Texas
Trial Court Cause No. 340,839-402
 

 
 
O P I N I O N
          Appellant, Sid Garton (“Sid”), challenges the trial court’s entry of a judgment
notwithstanding the verdict in favor of appellees, Linda Poe Rockett, Belinda Baker,
Jake Bennett, Mary Brigman, Johnny Poe, Bryan Wallen, Mark Poe, and Scott Baker,
in a will contest regarding the Estate of Cullen Benton Poe III (“Cullen”). In four
issues, Sid contends that the judgment notwithstanding the verdict should be reversed
and a judgment consistent with the jury’s verdict should be rendered because there
was more than a scintilla of evidence to support the jury’s findings that (1) the
purported will was executed by Cullen with all the formalities and solemnities to
make it a lawful and valid will; (2) the contents of the purported will were
substantially proved by the testimony of a credible witness who had read the will or
heard it read; (3) Cullen did not revoke the purported will; and (4) Sid filed the
proceeding to probate the purported will in good faith and with just cause. We affirm
in part and reverse and remand in part.
Factual and Procedural Background
          Cullen, a Houston attorney who was engaged in the general practice of law,
died on July 23, 2003 in Houston, Texas. Cullen did not have a spouse, children, or
parents at the time of his death. After Cullen’s death, Sid filed a “Third Amended
Application to Probate Copy of Will Not Produced in Court,” stating that Cullen
owned property of “probable value” in excess of $200,000, that Cullen left a valid
written will that was never revoked, that the will “apparently was altered to change
the date on the will to reflect a later year of execution of 1994,” that the alteration was
of “no effect and [was] not a part of the will offered for probate,” that Sid was unable
to locate the original will, that the will named Sid as independent executor, and that
the will was “self-proved.” The application listed a number of legal heirs, including
the appellees, “who would inherit in the absence of a valid will.” 
          Page one of the copy of the will attached to Sid’s application stated, “I hereby
give, devise and bequeath unto my cousin, ‘KITTY’ CATHERINE FRANCES
GARTON, all of the property that I may die seized and possessed of . . . .” Page one
of the copy of the will further stated, “I hereby appoint SID GARTON Independent
Executor of this my will . . . .” The purported signature of Cullen appears at the
bottom of page one of the copy of the will.
          Page two of the copy of the will provided
          IN TESTIMONY WHEREOF, I have hereunto set my hand this
the 29th day of August, 1994 in the presence of J.H. Gray and William
E. Davidson, who attest same as witnesses at my request, and I do declare
to them that this is my Last Will and Testament.



 
The purported signature of Cullen appears below this paragraph. Page two also
contained the following attestation clause:
          The above instrument was here now subscribed by Cullen B. Poe,
Testator, in our presence, and we, at his request, and in his presence and
in the presence of each other sign our names hereto as attesting
witnesses.
 
The purported signatures of Gray and Davidson, along with Gray’s and Davidson’s
addresses, appear under this attestation clause.
          A copy of a two-page affidavit, attached to the copy of the will, stated
          BEFORE ME, the undersigned authority, on this day personally
appeared CULLEN B. POE, J.H. Gray and William E. Davidson, known
to me to be the Testator and the witnesses, respectively, whose names
are subscribed to the annexed and foregoing instrument, in their
respective capacities, and all of said persons being by me first duly
sworn the said CULLEN B. POE, the Testator, declared to me and to the
said witnesses, in my presence, that said instrument is his Last Will and
Testament, and that he had willingly made and executed the same as his
free act and deed, for the purpose therein expressed; and the same
witnesses, each on his oath, stated to me, in the presence and hearing of
the said Testator, that the Testator had declared the same to them, and
that he had executed the same as such, and wanted each of them to sign
the same as witnesses, in the presence of the Testator, and at his request;
and he was at that time nineteen (19) years of age or over and was of
sound mind; that each of said witnesses was then at least fourteen (14)
years of age.



The purported signatures of Cullen, Gray, and Davidson appear under this affidavit.
The second page of the copy of the affidavit provided
          SUBSRCIBED and ACKNOWLEDGED BEFORE ME by the
said CULLEN B. POE, Testator, and SUBSCRIBED AND SWORN TO
BEFORE ME by the said J.H. Gray and William E. Davidson, witnesses,
on this the 29th day of August, 1994.



The purported signature of Virginia Atchison, as “Notary Public in and for Harris
County, Texas,” appears below this paragraph. 
          Appellees filed a contest to the probate of the copy of the will on the grounds
that it was not executed with the required formalities and solemnities and because the
will was not self-proved. The appellees also alleged that Sid did not present the
application for probate in good faith and with just cause.
          The case was tried to a jury. Sid testified that he met Cullen, a relative of his
wife, Kitty, in the 1970s. Sometime in the 1990s, Cullen told Sid that he did not want
his uncles, Mack and Joe Ellison, who Cullen had nicknamed “snake in the grass one”
and “snake in the grass two,” to inherit his property because of a prior dispute over
another family member’s estate; rather, Cullen told Sid that he intended to leave his
property to Kitty and that he wanted Sid to be in charge of his estate. The day before
Cullen died, Cullen called Kitty and Sid, and they spoke about Cullen’s health
problems. During this conversation, Cullen told Kitty that he had a will in his desk
drawer, that he wanted Sid to be “in charge” of his property, and that he was coming
to Tyler to visit Sid and Kitty and to see a heart doctor during the coming weekend. 
Cullen died the following day.
          After learning of Cullen’s death, Sid and Kitty looked for the original will at
Cullen’s office, home, and mobile home, but could not find it. Cullen’s office and
home appeared ransacked. Two weeks after Cullen’s death, Kitty checked their post
office box and found an envelope postmarked July 22, 2003, which contained a copy
of the will at issue. Sid, who was familiar with Cullen’s signature, identified the
testator’s signature on the copy of the will as being that of Cullen. 
          Jack Gray, a lawyer and a friend of Cullen, testified that he knew that Cullen
had nicknamed one of his uncles “the snake in the grass” and that Cullen had
previously told him that his uncles were trying to “steal” the estate of another family
member. At some point before 1978, Gray shared a law office with Cullen and
Davidson, and they frequently witnessed wills for each other. Atchison worked in
their office, and it was common for her to notarize wills. 
          Sid’s counsel presented Gray with the copy of the will offered for probate, and
Gray identified his signature on the attestation clause. Gray also stated that his name,
written above the attestation clause, looked to be in his handwriting, that his address
was printed in his handwriting, that he recognized Davidson’s signature below the
attestation clause, that he would not have signed the attestation clause unless he had
seen Cullen sign the will, and that he had no reason to question Cullen’s signature. 
Gray further stated that his signature appeared below the affidavit, that he recognized
Davidson’s signature below the affidavit, that he had no reason to believe that it was
not Cullen’s signature on the affidavit, and that his name, written in the affidavit,
looked to be in his handwriting. Finally, Gray stated that he presumed it was
Atchison’s signature that appeared on the affidavit and that he believed the will had
been executed “in a normal way.” 
          In regard to the date on the will, Gray stated “with all certainty” that he did not
sign a will in 1994 for Cullen in front of Atchison. Gray agreed it was possible that
he had executed the will before 1978 or before Atchison left their firm. On cross-examination, Gray stated that since it was his signature, he “must have witnessed the
will for Cullen Poe at some time.” He further stated that he did not know the contents
of wills that he witnessed and thus he could not “comment on the contents of [the]
will.” He also stated that he did not recognize any of the terms of the will. 
          Atchison testified that, for approximately three to four years in the 1970s, she
had worked as a secretary and a notary for a law firm named “Davidson, Gray,
Brimble & Poe,” and that two of the named lawyers were Jack Gray and Cullen Poe. 
She stated that she was a notary from the mid to late 1970s until 1992. Sid’s counsel
presented Atchison with a copy of the will offered for probate, and Atchsion
identified her signature on the affidavit. Atchison identified Gray’s signature, could
not identify the signature of Davidson, and stated that it looked like Cullen’s
signature on the copy of the will. Atchison agreed that she would not have signed the
will if Cullen, Gray, and Davidson had not been before her and signed the self-proving affidavit. Atchison further stated that she recalled notarizing a will for
Cullen sometime in the 1970s, and later stated that she notarized a will for Cullen in
1978. She confirmed that she only notarized one will for Cullen. She agreed that it
was possible that, if the date on the affidavit had been changed, the rest of the will
appeared the way it did when it was executed in the 1970s. It was her practice to read
the wills she notarized, and when she notarized Cullen’s will she read it. However,
she could not recall the contents of the will. 
          Frank Clark, Cullen’s friend, testified that Cullen had told him that he wanted
Kitty to get the bulk of his estate, except an antique car that he wanted to go to
appellee Linda Rockett. Cullen had also told him that he hated his uncles because of
problems related to the settling of an aunt’s estate and that he called his uncles
“snakes in the grass.” Mary Flo Walker, who met Cullen on only one occasion at a
holiday dinner in 1995, testified that she and Cullen discussed the topic of wills
during dinner and that Cullen had told her that he was giving everything to Kitty.
          Kitty testified that she and Sid spoke with Cullen on the morning of July 22,
2003 about Cullen’s health problems. Cullen told Kitty that he had a will, that he was
putting her in charge, and that he did not want his uncle to get anything. Kitty stated
that Cullen was angry with his uncles, and called them “snakes in the grass.” Cullen
told Kitty that his will was in his top right hand desk drawer at his office. After
Cullen died, Kitty looked for the original will in Cullen’s desk, but only found an
empty folder. Kitty searched Cullen’s office, and Sid searched Cullen’s house, but
they were unable to find the original will. Two to three weeks later, Kitty found a
copy of Cullen’s will in her post office box; Kitty stated that during her July 22, 2003
phone conversation with Cullen, Cullen had told her that he was mailing her a copy
of his will for her to look over and that he would be bringing the original will to Tyler
on the coming Friday. The copy of the will Kitty found in her post office box was in
a legal envelope with Cullen’s letterhead, postmarked July 22, 3003, and addressed
to Sid and Kitty in Cullen’s handwriting.


 Kitty, who was familiar with Cullen’s
handwriting, identified Cullen’s signature on the copy of the will. Finally, Kitty
testified that Cullen was of sound mind while she knew him and that he was over the
age of 18 in 1978 and 1994.
          At the conclusion of Sid’s case and at the conclusion of appellees’ case,
appellees moved for a directed verdict. The trial court denied appellees’ motions for
directed verdict. The case was submitted to the jury, and the jury found that (1) the
purported will offered by Sid was executed by Cullen with all the formalities and
solemnities to make it a lawful and valid will,


 (2) the contents of the purported will
had been substantially proven by the testimony of credible witnesses who had read
it or heard it read, (3) Cullen did not revoke the purported will,


 and (4) Sid filed his
application to probate the purported will in good faith and with just cause. 
          Appellees filed a motion for judgment notwithstanding the verdict on the
grounds that Sid failed to prove the due execution of the will, Sid failed to establish
that any witness had knowledge of the contents of the will, Sid failed to overcome the
presumption of revocation, and Sid did not offer the copy of the will in good faith and
with just cause. The trial court granted appellees’ judgment notwithstanding the
verdict on all grounds, and entered a judgment that Sid take nothing.
Standard of Review
          A trial court may grant a motion for judgment notwithstanding the verdict only
if there is no evidence to support the jury’s finding. Tiller v. McLure, 121 S.W.3d
709, 713 (Tex. 2003). To determine whether there is no evidence to support the
jury’s finding and, thus, to uphold the judgment notwithstanding the verdict, “we
must view the evidence in a light that tends to support the finding of disputed fact and
disregard all evidence and inferences to the contrary.” Wal-Mart Stores, Inc. v.
Miller, 102 S.W.3d 706, 709 (Tex. 2003). If more than a scintilla of evidence
supports the jury’s finding, “the jury’s verdict and not the trial court’s judgment must
be upheld.” Id. More than a scintilla of evidence exists if the evidence “rises to a
level that would enable reasonable and fair-minded people to differ in their
conclusions.” Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004)
(citations omitted). Conversely, evidence that is “so weak as to do no more than
create a mere surmise” is no more than a scintilla and, thus, no evidence. Id. 
          The jury is the sole judge of the credibility of witnesses and it may choose to
believe one witness and disbelieve another; a reviewing court may not impose its own
opinion to the contrary. City of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex. 2005). 
Because it is the province of the jury to resolve conflicts in the evidence, a reviewing
court must assume that jurors resolved all conflicts in accordance with their verdict. 
Id. at 819–20. 
Contents of Will
          In his second issue, Sid contends that the testimony of the witnesses and
documentary evidence, including a copy of the will, provided more than a scintilla of
evidence to support the jury’s finding that the contents of the purported will had been
substantially proven by the testimony of credible witnesses who had read it or heard
it read. Appellees assert that neither Gray nor Atchison could testify as to the
contents of the will, and that there was no evidence that anyone had even read the will
or had the will read to them. 
          Question two of the charge asked, “Do you find that the contents of the
Purported Will


 have been substantially proved by the testimony of a credible witness
who has read it or heard it read?” The jury answered, “Yes.” 
          A party seeking to probate a copy of a will, rather than the original, must
proceed under section 85 of the Probate Code, which provides the requirements for
proving a “written will not produced in court.” See In re Estate of Capps, 154
S.W.3d 242, 244 (Tex. App.—Texarkana 2005, no pet.); Bracewell v. Bracewell, 20
S.W.3d 14, 26 (Tex. App.—Houston [14th Dist.] 2000, no pet.); Howard Hughes
Med. Inst. v. Neff, 640 S.W.2d 942, 951–52 (Tex. App.—Houston [14th Dist.] 1982,
writ ref’d n.r.e.); see also Miller v. Miller, 285 S.W.2d 373, 374–75 (Tex. Civ.
App.—Eastland 1955, no writ).



          Section 85 provides that the contents of a written will that cannot be produced
in court “must be substantially proved by the testimony of a credible witness who has
read it or heard it read.” Tex. Prob. Code Ann. § 85 (Vernon 2003).


 “While it is
not necessary to establish all of the contents of an alleged lost will literally or
verbatim, it is necessary to establish its material contents with some degree of
certainty in order to be able to pass title to the property devised and such is
particularly true of land.” Cason v. Taylor, 51 S.W.3d 397, 409 (Tex. App.—Waco
2001, no pet.) (citing Harris v. Robbins, 302 S.W.2d 225, 229 (Tex. Civ.
App.—Amarillo 1957, no writ)). “The statutory requirements for substantial proof
of the contents of an alleged lost will have not been satisfied so long as the court is
left in confusion about the real provisions of the will or how to vest title to the
property involved.” Id.
          Here, Sid failed to offer any testimony concerning the contents of the original
will by a credible witness who read the will or heard it read. Gray testified only that
it was his signature that appeared on the copy of the will offered by Sid. Gray
conceded that he does not know the contents of wills that he witnesses and that, as
a result, he could not “comment on the contents of [Cullen’s] will.” He also stated
that he did not recognize any of the terms of the will. Atchsion identified her
signature and Cullen’s signature, recalled notarizing a will for Cullen sometime in
the 1970s, and stated that it was her practice to read wills that she notarized. 
However, she could not recall the contents of the will that she notarized in the 1970s. 
Neither Gray nor Atchison offered any testimony indicating that the contents of the
copy of the will offered by Sid reflected the contents of the original “written will not
produced in court.”
          Additionally, neither Kitty nor Sid claimed to have ever seen the original
“written will not produced in court,” and the first time they saw the purported copy
of the will was when they received it in the mail several weeks after Cullen’s death. 
Sid’s and Kitty’s testimony as to the contents of Cullen’s will was necessarily based
on the contents of the copy of the will offered for probate. Walker and Clark, the
other witnesses presented by Sid, also could not offer any testimony that they had
ever seen the will or heard it read. 
          We recognize that other courts have permitted a proponent of a will to refer to
a copy of a will when seeking to probate a “written will not produced in court.” Sid
relies heavily on the Texarkana Court of Appeals’ recent holding in Capps, 154
S.W.3d at 242. However, the court in Capps did not directly address the requirement
in section 85 that the contents of a written will not produced in court “must be
substantially proved by the testimony of a credible witness who has read it or heard
it read.” Instead, the court addressed the contestants’ arguments that the evidence
was insufficient “to show either the cause for nonproduction of the original will or
that the will had not been revoked.” Id. at 243. Additionally, in holding that there
was sufficient evidence to probate the copy of the testator’s holographic will, the
Capps court noted that a witness testified that, shortly after executing his will, the
testator gave her a copy of his original will, instructed her to make a copy and store
it in his church’s records, and told her to store the copy of the original will in a safe
place. Id. at 244. The witness further testified that she made copies of the will, stored
them in accordance with the testator’s instructions, and that the copies remained
stored until the testator’s death. Id. After the testator’s death, the original, which
apparently had been in the testator’s possession, could not be located. Id. The court
commented that the evidence was “sufficient to show that the document produced was
an accurate photocopy of the will written and signed by [the testator] and that, despite
a diligent search, the original was not found.” Id. at 244–45 (emphasis added).


 The
court specifically held that the evidence provided “a sufficient explanation of the
cause of the nonproduction of the original will.” Id.
          Similarly, in Bracewell, 20 S.W.3d at 26, the court focused on whether there
was sufficient evidence that the will was properly executed; it did not address
whether the contents of the “written will not produced in court” had been
substantially proved by the testimony of a credible witness who has read it or heard
it read. Moreover, the copy of the will offered for probate in Bracewell was a copy
of a joint will, and the surviving testator testified that the copy was a copy of the
original that he executed. Id.  
          Finally, in Miller, where the court specifically held that a copy of a will raised
a fact issue regarding the contents of an alleged “lost will,” there was testimony from
multiple witnesses who had seen the original lost will and these witnesses testified
that the copies offered for probate were exact copies of the original or were, “in
substance,” the same as the original. 285 S.W.2d at 374–75.


 
          These cases merely establish that, in certain circumstances and absent certain
objections by a contestant, a copy of a will may be probated; they do not establish,
as Sid suggests, that if there is a purported copy of a will, section 85’s requirement
of proving the contents of the “written will not produced in court” can be satisfied by
simply reading the “readily ascertainable” contents of the copy. Absent
circumstances like those presented in the above cases, reading a purported copy of a
will only proves the contents of the copy; section 85 requires proof of the contents of
the “written will not produced in court.” Additionally, in Bracewell and Miller, there
was testimony indicating that the copy of the will being offered for probate was
identical or similar in substance to the “written will not produced in court.” In this
case, there was no testimony proving the contents of the “written will not produced
in court” by someone who had read it or heard it read, and there was no testimony
establishing that the copy was an accurate copy of the “written will not produced in
court.” Despite Sid’s suggestion that when a proponent presents a copy of an
executed will courts are less concerned about requiring additional evidence regarding
contents, we cannot disregard the plain language in section 85, which requires the
contents of a “written will not produced in court” to be proved by the testimony of a
credible witness “who has read it or heard it read.” Tex. Prob. Code Ann. § 85. 
          We hold that there was no evidence supporting the jury’s finding that the
contents of the will were substantially proved by the testimony of a credible witness
who read the will or heard it read. Accordingly, we further hold that the trial court
did not err in granting appellees’ judgment notwithstanding the verdict with respect
to Sid’s application to admit the copy of the will to probate. 
          We overrule Sid’s second issue.



Application in Good Faith and Just Cause
          In his fourth issue, Sid contends that there was more than a scintilla of evidence
to support the jury’s finding that Sid filed his application to probate the purported will
in good faith and with just cause.


 Sid asserts that appellees offered no evidence
supporting their allegations that Sid was aware that the copy of the will was not
Cullen’s last will and testament and that he was not honest when he presented the trial
court with the copy of the will. Appellees counter that Sid’s testimony was “replete
with internal inconsistencies” and diverged from Kitty’s testimony and that “no
reasonable jury” could have found the copy of the will was a true and correct copy
of a will that Cullen had executed.
          Question four of the charge asked, “Did Sid Garton bring this proceeding to
probate the Purported Will of the Decedent in good faith and with just cause?” The
jury answered, “Yes.” The jury was instructed that good faith means “an action that
is prompted by honesty of intention or a reasonable belief that the action was
probably correct” and that “with just cause” means “that the action of Sid Garton in
this proceeding must be based on reasonable grounds and there must have been a fair
and honest cause of action for said reasons.”
          Section 243 of the Probate Code provides
       When any person designated as executor in a will or an alleged will,
or as administrator with the will or alleged will annexed, defends it or
prosecutes any proceeding in good faith, and with just cause, for the
purpose of having the will or alleged will admitted to probate, whether
successful or not, he shall be allowed out of the estate his necessary
expenses and disbursements, including reasonable attorney’s fees, in
such proceedings. When any person designated as a devisee, legatee, or
beneficiary in a will or an alleged will, or as administrator with the will
or alleged will annexed, defends it or prosecutes any proceeding in good
faith, and with just cause, for the purpose of having the will or alleged
will admitted to probate, whether successful or not, he may be allowed
out of the estate his necessary expenses and disbursements, including
reasonable attorney’s fees, in such proceedings.
 
Tex. Prob. Code Ann. § 243 (Vernon 2003) (emphasis added).

          Sid and Kitty testified that Cullen had told them that he did not want his uncles
to inherit his property, that he intended to leave his property to Kitty, and that he
wanted Sid to be in charge of his estate. Sid and Kitty further testified that, the day
before Cullen died, Cullen called them and stated that he wanted Sid to be “in charge”
of his property. After Cullen’s death, Sid and Kitty searched for the original will, but
were unsuccessful. Two weeks after Cullen’s death, Kitty found an envelope
postmarked July 22, 2003, containing the copy of a will ultimately offered by Sid. 
Sid and Kitty, who were familiar with Cullen’s signature, testified that Cullen’s
signature appeared on the copy of the will. Kitty also testified that during their phone
conversation on July 22, 2003, Cullen had told her that he was mailing her a copy of
the will for her to look over. Kitty stated that the envelope she found in her post
office box contained Cullen’s letterhead and was addressed to Sid and Kitty in
Cullen’s handwriting. Testimony provided by Clark and Walker corroborated Sid’s
and Kitty’s testimony that Cullen wanted to leave his property to Kitty. 
          Section 243 provides for the award of attorney’s fees for the defense of a will
or “an alleged will” prosecution of an attempt to admit a will “or an alleged will” to
probate “whether successful or not.” Id. Section 243 “specifies that this attempt must
be made in good faith, but does not require that the document offered as a will
ultimately be found valid.” Zapalac v. Cain, 39 S.W.3d 414, 419 (Tex.
App.—Houston [1st Dist.] 2001, no pet.); see also In re Estate of Huff, 15 S.W.3d
301, 305 (Tex. App.—Texarakana 2000, no pet.) (upholding attorney’s fees awarded
under section 243 even though trial court found purported will to be invalid).
          Appellees challenge Sid’s good faith by citing to alleged inconsistencies in
Sid’s and Kitty’s testimony. Appellees allege that Sid’s probate proceeding was
based on nothing but “an alleged, unrecorded, telephone conversation” and Sid and
Kitty’s “bald assertion” that the copy of the will was mailed to them. Appellees pose
rhetorical questions as to why a person would entrust an important legal document
to a post office and why the envelope that allegedly contained a copy of the will was
not presented at trial. These issues are appropriately considered by a jury, not an
appellate court. Although appellees dispute the credibility of Sid’s and Kitty’s
testimony, the jurors, who were the sole judges of the credibility of witnesses, were
presented with some evidence that Sid filed his application to probate the will in good
faith and with just cause, and the jurors were free to believe or disbelieve such
evidence. City of Keller, 168 S.W.3d at 819. Determining whether Sid filed his
application to probate the will in good faith and with just cause was a question that
was appropriately resolved by the jury. See Collins v. Smith, 53 S.W.3d 832, 843
(Tex. App.—Houston [1st Dist.] 2001, no pet.) (noting that in light of conflicting
evidence on issues of undue influence and testamentary intent and capacity, evidence
was factually sufficient to support jury’s finding that applicant did not proceed in
good faith and with just cause).
          We hold that there was more than a scintilla of evidence supporting the jury’s
finding that Sid filed his application to probate the will in good faith and with just
cause. Accordingly, we further hold that the trial court erred in granting appellees’
judgment notwithstanding the verdict with respect to Sid’s request for an award of
attorney’s fees, consistent with the stipulation of the parties, under section 243 of the
Probate Code.
          We sustain Sid’s fourth issue.
Conclusion
          Having held that the trial court did not err in granting appellees’ judgment
notwithstanding the verdict with regard to Sid’s application to admit the copy of the
purported will to probate because there was no evidence supporting the jury’s finding
that the contents of the will were substantially proved by the testimony of a credible
witness who read the will or heard it read, we need not address Sid’s first and third
issues. Having further held that the trial court erred in granting appellees’ judgment
notwithstanding the verdict with respect to Sid’s request for an award of attorney’s
fees under section 243 of the Probate Code, we affirm in part and reverse and remand
in part for entry of a judgment consistent with this opinion.



 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Justices Nuchia, Jennings, and Higley.