Opinion issued December 14, 2006








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01068-CV






 NADINE JOHNSON, Appellant


V.


THE METHODIST HOSPITAL, Appellee






On Appeal from the 280th District Court

 Harris County, Texas

Trial Court Cause No. 2003-47465A






O P I N I O N


 A jury found The Methodist Hospital ("Methodist") medically negligent in its
handling of a blood sample taken from Nadine Johnson ("Johnson"). Methodist
moved for and was granted a Judgment Non Obstante Verdicto ("JNOV"). In three
issues, Johnson argues that the trial court erred in granting the JNOV motion because
(1) there was sufficient evidence of physical injury, (2) there was sufficient evidence
of causation, and (3) there was no express or implied abandonment of claims. We
affirm.

Background 


 In her eighth month of pregnancy, Johnson decided to change doctors. As part
of a routine new-patient exam, Johnson was sent to Methodist's "draw center" for
blood work on December 17, 2002. The blood work was then sent to Quest
Diagnostics Clinical Laboratories ("Quest") for testing. Ten days later, Johnson's
doctor informed her that her blood had tested positive for human immunodeficiency
virus ("HIV") and referred Johnson to Dr. Hammill, an infectious disease specialist
who was better equipped to handle her pregnancy. 

 Dr. Hammill scheduled an appointment for Johnson and her husband that same
day. During this appointment, Dr. Hammill told Johnson that it was important for her
to get to the hospital before her water broke in order to reduce the chances of the baby
contracting HIV during delivery. Johnson was told that, once she arrived at the
hospital, she would be treated with AZT and that, after the baby was delivered, he
would immediately be taken and treated with AZT as well. In addition, Dr. Hammill
ordered further blood work for both Johnson and her husband. Johnson testified that
she believed eight or nine vials of blood were drawn at this time. 

 After leaving Dr. Hammill's office, Johnson and her husband informed their
mothers that Johnson was HIV positive. Johnson testified that, after speaking with
her mother and mother-in-law, she was "exhausted and upset and [ ] just wanted to
go lay [sic] down." It was not long after Johnson lay down that she realized she was
in labor and went to the hospital. Once she arrived, the delivery room staff treated
Johnson intravenously with AZT. After 12 hours of labor, she delivered a baby boy,
who was taken from the delivery room immediately after his birth and treated with
AZT. Because the baby could not be tested for HIV for a period of 10 to 14 days,
Johnson was instructed to continue her son's AZT treatment at home by administering
oral droplets once every six hours. 

 The record indicates that, the day after Johnson delivered her son, either she
or her husband was told that the preliminary testing on the additional blood work
ordered by Dr. Hammill showed that she was HIV negative. Approximately three
days later, Dr. Hammill confirmed the negative test results with Johnson and
instructed her to immediately discontinue her son's AZT treatments.

 Johnson and her husband, as individuals and on behalf of their newborn son,
sued both Methodist and Quest for medical negligence, alleging that Methodist and
Quest breached their duty of care in handling and testing Johnson's blood. (1) Johnson
offered the expert testimony of Dr. Radelat, who testified by video deposition that he
believed Johnson's blood sample had been mislabeled by Methodist, but that the
testing performed by Quest was accurate. Dr. Radelat indicated, however, that no
"demonstrable physical effects" resulted from the short-term use of AZT by both
Johnson and her son, but that he believed Johnson and her husband had "some very
bad moments" as a consequence of the false-positive results. When Johnson testified
on cross-examination concerning her damages, she stated that she experienced
"sadness, anger, regret, depression, shock, devastation, loneliness and pity for [her]
children and husband."

 The jury returned a verdict in favor of Johnson, finding that the negligence of
Methodist proximately caused Johnson's damages and awarding $50,000 as
compensation for mental anguish and $2,000 as compensation for physical injuries. 
Methodist moved for JNOV, arguing that Johnson (1) failed to present any evidence
of physical injury and, consequently, her claim amounted to nothing more than an
impermissible cause of action for negligent infliction of emotional distress, (2) failed
to offer expert testimony on the issue of causation as is required by Texas law in
medical negligence cases, and (3) expressly or impliedly abandoned her claims. 
Without specifying its reasons, the trial court granted Methodist's motion for JNOV. 
Johnson appeals. 

 JNOV Motion


 In three issues, Johnson argues that the trial court erred in granting the JNOV
motion because (1) there was sufficient evidence of physical injury, (2) there was
sufficient evidence of causation, and (3) there was no express or implied
abandonment of claims. We disagree.

A. Standard of Review 

 An appellate court reviews a JNOV under a no-evidence standard of review. 
See Garton v. Rockett, 190 S.W.3d 139, 144 (Tex. App.--Houston [1st Dist.] 2005,
no pet.). That is, we will affirm only if there is no evidence to support an issue, or
conversely, if the evidence establishes an issue as a matter of law. See Best v. Ryan
Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990); Garton, 190 S.W.3d at 144. To
determine whether there is no evidence to support the jury's finding, "we must view
the evidence in a light that tends to support the finding of disputed fact and disregard
all evidence and inferences to the contrary." Wal-Mart Stores, Inc. v. Miller, 102
S.W.3d 706, 709 (Tex. 2003). If more than a scintilla of evidence supports the jury's
finding, "the jury's verdict, and not the trial court's judgment must be upheld." Id. 
More than a scintilla of evidence exists where the evidence "rises to a level that
would enable reasonable and fair-minded people to differ in their conclusions." Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). Evidence that is "so weak
as to do no more than create a mere surmise," however, is no more than a scintilla
and, thus, no evidence. Id. (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63
(Tex. 1983).

B. Physical Injury Evidence

 In her briefing to this Court, Johnson argues that the insertion of the IV, the
unnecessary AZT treatments, and the repeated drawing of blood caused her physical
injury. Methodist, on the other hand, argues that Johnson's claim is, in reality, one
for negligent infliction of emotional distress, and not medical negligence, because the
evidence shows that Johnson suffered only mental anguish as a result of the false-positive test result. According to Methodist, the jury could not award mental anguish
damages under Texas law absent evidence of physical injury.

 Texas does not recognize a general legal duty to avoid negligently inflicting
mental anguish. Boyles v. Kerr, 855 S.W.2d 593, 597 (Tex. 1993). Negligently
inflicted mental anguish, however, may be an element of recoverable damages under
certain circumstances. See City of Tyler v. Likes, 962 S.W.2d 489, 494 (Tex. 1997). 
For example, Texas has authorized recovery of mental anguish damages in virtually
all personal injury actions. Krishnan v. Sepulveda, 916 S.W.2d 478, 481 (Tex. 1995). 
This is because, "[w]here serious bodily injury is inflicted, . . . we know that some
degree of physical and mental suffering is the necessary result." See Likes, 962
S.W.2d at 495 (quoting Brown v. Sullivan, 71 Tex. 470, 10 S.W. 288, 290 (1888)). 
In addition, when negligent conduct causes a mental shock which produces a serious
bodily injury, the defendant is liable for that injury provided it was foreseeable. Id.
at 495-96; see also Cavitt v. Jetton's Greenway Plaza Cafeteria, 563 S.W.2d 319,
323-24 (Tex. Civ. App.Houston [1st Dist.] 1978, no writ) (holding plaintiff
suffered physical injury of severe and persistent nausea and mental anguish after
finding a roach in her food). Absent bodily injury, mental anguish is also
compensable as the foreseeable result of a breach of a duty arising out a special
relationship. Likes, 962 S.W.2d at 496; see, e.g., Krishnan, 916 S.W.2d at 482
(physician-patient relationship); Stuart v. W. Union Tel. Co., 66 Tex. 580, 18 S.W.
351 (1885) (failure to deliver news of a family emergency); Freeman v. Harris
County, 183 S.W.3d 885, 890 (Tex. App.--Houston [1st Dist.] 2006, pet. filed) (loss
of baby's body during statutorily-mandated autopsy); Pat H. Foley & Co. v. Wyatt,
442 S.W.2d 904, 907 (Tex. Civ. App.--Houston [14th Dist.] 1969, writ ref'd n.r.e.)
(failure to properly embalm corpse at funeral home). 

 Where the defendant neither physically injures the plaintiff nor stands in some
special relationship with him, recovery for mental anguish is permitted in only a few
types of cases involving injuries "of such a shocking and disturbing nature that
mental anguish is a highly foreseeable result." Likes, 962 S.W.2d at 496; see, e.g.,
Freeman v. City of Pasadena, 744 S.W.2d 923 (Tex. 1988) (bystander recovery); 
Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, 551 (Tex. 1985) (wrongful
death suit). Nevertheless, in those cases where damages for mental anguish are
recoverable, Texas no longer requires a physical manifestation of mental anguish. 
See Likes, 962 S.W.2d at 495. The plaintiff, however, must produce direct evidence
of the nature, duration, and severity of the mental anguish, establishing a substantial
disruption in his daily routine to be entitled to mental anguish damages. See id.
(quoting Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995)).

 Johnson's claims are not among those for which mental anguish is recoverable
in the absence of a physical injury--that is, she and Methodist did not have a special
relationship and the injury she complains of is not one that has been recognized as
giving rise to mental anguish damages based on its shocking and disturbing nature. 
See Freeman, 744 S.W.2d at 923; Cavnar, 696 S.W.2d at 551. Rather, Johnson
asserts an ordinary negligence claim based on the breach of Methodist's duty to use
ordinary care in handling and processing her blood for testing. Accordingly,
Johnson's award of mental anguish damages must be supported by a finding of 
physical injury, and we look to the record to determine whether there is more than a
scintilla of evidence to support the jury's finding that Johnson did, in fact, sustain a
physical injury. 

 Johnson argues that she sustained physical injuries when (1) an IV needle was
inserted into her arm for purposes of administering AZT, (2) AZT was unnecessarily
introduced into her system, and (3) numerous, unnecessary vials of blood were drawn
from her body. In Verinakis v. Medical Profiles, Inc., the Fourteenth Court of
Appeals addressed a situation similar to Johnson's. 987 S.W.2d 90 (Tex.
App.Houston [14th Dist.] 1998, pet. denied). There, the plaintiff submitted to
blood testing as part of his application for a life insurance policy. Id. at 93. Like
Johnson, the plaintiff received a false-positive result. Id. at 93-94. He argued that,
because he became physically sick after being told he was HIV positive, he suffered
a serious bodily injury that allowed him to recover mental anguish damages. Id. at
95. He argued, in the alternative, that he "suffered bruising and pain as a result of
repeatedly having blood drawn as part of the HIV follow-up." Id. at 96. The court
held that neither of these alleged physical injuries rose to the level necessary to
support the recovery of mental anguish damages. Id. at 95-96. We agree with the
result reached by the Fourteenth Court of Appeals. While the facts in Johnson's case
are different in that she was actually administered an HIV drug, her own expert
testified that she did not have any "demonstrable physical effects" as a result of that
treatment. In light of this testimony, Johnson's evidence created only a mere surmise
that she sustained a physical injury, and, as such, constitutes no evidence. See Ford,
135 S.W.3d at 601. Because there was no evidence of a physical injury, the award
of mental anguish damages was improper under Texas law. 

 In its motion for JNOV, Methodist defeated the damages element of Johnson's
negligence claim. The JNOV was, therefore, proper, and we overrule Johnson's first
issue. We do not consider Johnson's second and third issues because this first issue
alone presents adequate grounds for affirming the trial court's order granting
Methodist's motion for JNOV.

Conclusion 

 We affirm the judgment of the trial court. (2) 




 George C. Hanks, Jr.

 Justice


Panel consists of Justices Taft, Keyes, and Hanks.



 
1. 
 ' - 
2. ' - 
 '