**Opinion issued August 18, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-14-00598-CV**

————————————

**JOHANNA DABBS, Appellant**

**V.**

**VINCENT CALDERON, Appellee**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-76748**

---

**MEMORANDUM OPINION**

This is a personal-injury negligence case. Johanna Dabbs contends that the evidence is legally and factually insufficient to support (1) the trial court's conclusion that Dabbs negligently ran a red light and (2) damages for physical

pain, mental anguish, physical impairment, and future medical expenses awarded to Vincent Calderon. We affirm.

## Background

In August 2011, a van driven by Dabbs ran a red light and crashed into two cars. Calderon, a passenger in one of those cars, was pinned inside the wreckage. When emergency personnel freed Calderon, they discovered that his leg had been badly injured. Calderon was screaming in pain.

Calderon was rushed to the hospital, where doctors discovered a fracture in his shin bone near his knee. Doctors gave Calderon a Vicodin prescription, placed his leg in a stabilizer, and discharged him the same day. Calderon asserts that, in the weeks after the accident, he had to rely on family to cook for him and bathe him.

Three weeks later, Calderon returned to the hospital; his leg was covered in fracture blisters. Doctors surgically attached an external fixator along the length of his injured leg. He remained in the hospital for five days. Six months later, Calderon had another surgery to detach the external fixator. He also attended physical therapy three days per week from November 2011 to April 2012.

According to Calderon, when he uses his right leg, the leg becomes painful and his foot swells and turns blue. The leg has significantly atrophied from nonuse. Calderon testified that this has significantly impacted his ability to do things he

2

once enjoyed, like playing sports with his son. Before the accident, Calderon had almost completed training at Texas Barber College. Because he cannot stand, he is unable to finish his training.

Calderon suffers from other medical conditions unrelated to the accident. Calderon suffers from diverticulitis, a painful and chronic gastrointestinal disease. Also, he was born with hydrocephalus, a medical condition affecting cognition and memory. He has never been able to drive or obtain employment other than manual labor. He has struggled most of his life to maintain employment.

Calderon sued Dabbs for negligently running the red light. The case was tried to the bench. At trial, Calderon contended that Dabbs ran the light because she was not paying attention. Dabbs contended that she could not stop at the red light because her brakes failed.

The trial court returned a verdict in Calderon's favor and awarded him damages for past and future medical expenses, physical pain and mental anguish, physical impairment, and disfigurement. Dabbs timely appealed.

## Negligence

In her first issue, Dabbs challenges the legal and factual sufficiency of the evidence that she acted negligently.

**A. Standards of review**

**1. Legal-sufficiency standard**

"A party will prevail on its legal-sufficiency challenge of the evidence supporting an adverse finding on an issue for which the opposing party bears the burden of proof if there is a complete absence of evidence of a vital fact or if the evidence offered to prove a vital fact is no more than a scintilla." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014). The evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see Waste Mgmt of Tex.*, 434 S.W.3d at 156. When reviewing a legal-sufficiency challenge, we consider all of the evidence supporting the judgment, "credit[ing] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *City of Keller*, 168 S.W.3d at 827. We consider the evidence in the light most favorable to the findings and indulge every reasonable inference that would support them. *Id*. at 822; *see Zenner v. Lone Star Striping & Paving L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

**2. Factual-sufficiency standard**

To prevail on a factual-sufficiency challenge when an opposing party has the burden of proof, the complaining party must show that the adverse finding is "so

4

against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *accord Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In conducting a factual-sufficiency review, "we consider and weigh all of the evidence supporting and contradicting the challenged finding." *McMahon v. Zimmerman*, 433 S.W.3d 680, 691 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *accord Ortiz*, 917 S.W.2d at 772; *Cain*, 709 S.W.2d at 176.

## B.    Legal sufficiency

It is undisputed that Dabbs's vehicle entered the intersection on a red light, as reflected in the police report. Dabbs contends that the accident was unavoidable because her brakes failed; Calderon contends that Dabbs ran the red light because she was not paying attention. *See Ashman v. Smith*, 389 S.W.2d 509, 512 (Tex. Civ. App.—Houston 1965, no writ) ("If a party is unable to avoid a violation and has not wrongfully placed himself in a position that brings such inability about, he is excused insofar as civil liability is concerned.").

Enough evidence was presented to support a finding that Dabbs was negligent. According to Calderon's sister, Mayra Sierra, Dabbs said at the scene that she was distracted by a crying child in her van. At trial, Dabbs conceded that she did not know the traffic light's color as she approached the intersection. And although Dabbs blamed the accident on malfunctioning brakes, her brakes passed

inspection a few weeks before the accident. She presented no evidence of brake problems before the accident, break repairs after the accident, or expert testimony supporting her brake-failure theory. Moreover, Calderon testified that the back of Dabbs's van rose, as though the brakes were engaging, just before the collision.

This evidence would enable a reasonable and fair-minded jury to conclude that the accident was caused by inattentiveness and not faulty brakes. Thus, this is legally sufficient evidence that Dabbs was negligent.

## C.     Factual sufficiency

Next, we address Dabbs's factual-sufficiency challenge. As we have already mentioned, Calderon adduced evidence that Dabbs was "distracted," and Dabbs conceded that she did not know the color of the traffic light. At trial, Dabbs insisted that the accident was unavoidable because "I tried to stop my vehicle by depressing the brakes and the car didn't stop." Dabbs adduced no evidence of a brake failure other than her own testimony. Therefore, the determination of whether the accident was unavoidable is solely a question of witness credibility. But the factfinder "is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary." *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 781–82 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We will not disturb the trial court's decision to place greater weight on the

testimony supporting negligence. *See Boyd v. Palmore*, 425 S.W.3d 425, 431 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

We conclude that the evidence is both legally and factually sufficient to support the trial court's judgment that Dabbs negligently caused the accident. Accordingly, we overrule Dabbs's first issue.

## Damages

In her second issue, Dabbs challenges the legal and factual sufficiency of the evidence supporting the trial court's various damages awards.

### A.      Standards of review

#### 1.      Legal-sufficiency standard

The standard for determining whether there is legally sufficient evidence to support recovery for a challenged category of damages is the same standard used in any other legal-sufficiency review: "[W]e sustain a legal-sufficiency challenge to an adverse finding if our review of the evidence demonstrates a complete absence of a vital fact, or if the evidence offered is no more than a scintilla." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014).

#### 2.      Factual-sufficiency standard

"In addition to the legal sufficiency of evidence, we have recognized an imperative that appellate courts determine whether any evidence supports the *amount* of jury damages." *Id.* (citing *Bentley v. Bunton*, 94 S.W.3d 561, 606 (Tex.

2002)). "The standard of review for an excessive damages complaint is factual sufficiency of the evidence." *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). "The court of appeals should employ the same test for determining excessive damages as for any factual sufficiency question." *Id.* We set aside the challenged award "only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust." *Id.* at 407.

## B.    Physical pain and mental anguish

Dabbs argues that the evidence is legally and factually insufficient to support the trial court's award of $250,000 for past mental anguish and physical pain and $75,000 for future mental anguish and physical pain.

### 1.    Physical pain and mental anguish defined

Mental anguish is a "relatively high degree of mental pain and distress . . . . [It is] more than mere disappointment, anger, resentment or embarrassment, although it may include all of these." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). "There must be both evidence of the existence of compensable mental anguish and evidence to justify the amount awarded." *Hancock v. Variyam*, 400 S.W.3d 59, 68 (Tex. 2013). "Texas has authorized recovery of mental anguish damages in virtually all personal injury actions." *Johnson v. Methodist Hosp.*, 226 S.W.3d 525, 529 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Krishnan v. Sepulveda*, 916 S.W.2d 478, 481 (Tex. 1995)).

"This is because, '[w]here serious bodily injury is inflicted, . . . we know that some degree of physical and mental suffering is the necessary result.'" *Id.* (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997)). "Even when an occurrence is of the type for which mental anguish damages are recoverable, evidence of the nature, duration, and severity of the mental anguish is required." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 231 (Tex. 2011); *see Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797–98 (Tex. 2006). "Damages for future mental anguish are recoverable only if there is a reasonable probability that they will be suffered in the future." *Hicks v. Ricardo*, 834 S.W.2d 587, 590 (Tex. App.—Houston [1st Dist.] 1992, no writ).

In personal-injury cases, plaintiffs may also recover for physical pain. Past physical pain may be shown by direct testimony or circumstantially. *See Prescott v. Kroger Co.*, 877 S.W.2d 373, 376 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Figueroa v. Davis*, 318 S.W.3d 53, 62 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Damages for future physical pain are recoverable if a jury could reasonably infer that the plaintiff will feel physical pain in the future. *See Figueroa*, 318 S.W.3d at 63–64; *see also Hicks*, 834 S.W.2d at 590.

Mental anguish and physical pain are often combined, as here, into a single element of damages. *See* Texas Pattern Jury Charges—General Negligence & Intentional Personal Torts (2010), PJC 15.3 & cmt.; *see also Figueroa*, 318 S.W.3d

9

at 58. When there is one combined award for mental anguish and physical pain, "[s]ufficient evidence of either . . . physical pain or . . . mental anguish could support the award." *Figueroa*, 318 S.W.3d at 63.

## 2. Past physical pain and mental anguish

The trial court awarded $250,000 in past mental anguish and physical pain. Dabbs admits that "Calderon presented evidence to support *an* award of damages for past physical pain." However, she contends that the combined award for past physical pain and mental anguish is excessive. We disagree.

After the accident, Calderon testified that the "front dash was smashed down" over his right leg, pinning him inside the car. He described himself as "hysterical," "panicky," and "petrified." He was also in "pain that I never endured in my life." Calderon's sister, Sierra, testified that Calderon was "freaking out" and screaming in pain while pinned inside the wreckage and during the ambulance ride to the hospital. Calderon's mother, Maria, testified that when she met Calderon at the hospital "[h]e was crying . . . . He was in a lot of pain."

Calderon introduced Houston Fire Department records from the crash. The first responders recorded Calderon's condition: "Severe pain to [right] knee . . . . [L]ower leg found to be deformed, with redness and swelling . . . . [Calderon] began to hyperventilate on scene [and] had carpal spasms." On a one-to-ten scale, the first responders rated Calderon's apparent pain a ten.

10

Doctors determined that Calderon fractured his upper shin bone. According to Maria, Calderon's leg was placed in a stabilizer with steel bars running from his thigh to his ankle. After Calderon came home, he relied on Maria for "[e]verything. Cooked for him. Help him bathe. Help him go to the restroom . . . . Help him get dressed." Calderon testified that "at that time I did need help because I couldn't wipe myself . . . . I wasn't able to sit down to use the restroom . . . . [I]t was humiliating."

Three-and-a-half weeks later, Calderon returned to the hospital because, according to Maria, "the pain was too much for him." His leg was covered in fracture blisters. The next morning, doctors surgically attached an external fixator to Calderon's leg. He described the device as having "pins that go into the side [of the leg]. You have to keep adjusting them and adjusting them. You have these holes that, you know, it oozes out mucus, blood . . . . And it was very painful." The device extended from Calderon's ankle to his "high thigh."

Calderon remained in the hospital for five days. Maria testified that Calderon continued to feel pain after he returned home despite taking prescription pain killers. Several days later, he passed out in his bath tub from high blood pressure caused by his pain.

Several months later, Calderon underwent another surgery to remove the external fixator. Although the fixator has been removed, significant metal

hardware remains in his leg. He attended physical therapy for four months; Calderon and Maria testified that physical therapy caused yet more pain.

At trial, almost three years after the accident, Calderon reported that he cannot stand for very long without swelling and pain in his right leg. If he stands too long, his right foot turns blue. The trial court observed several scars on Calderon's right leg and estimated at least one to be six to eight inches long. Calderon's right leg has significantly atrophied from nonuse.

Calderon has a four year old son. He told the court that he is depressed and bothered because "I can't do the things that I want to do with him" such as hold him or play sports with him.

Before the accident, Calderon had almost completed training at Texas Barber College. Because he is now unable to stand, he has not been able to complete his training or make money cutting hair. Calderon testified that "[i]t bothers me a lot" to have put so much time and effort into learning to cut hair but be unable to pursue that goal. He has been unable to secure employment and told the court, "It bothers me tremendously just because—I mean, who doesn't want to provide for their family or their child . . . . I can't."

Dabbs offers several reasons why this is insufficient evidence of past mental anguish and physical pain. First, with respect to mental anguish, she contends that Calderon did not prove "anything more than mere worry, anxiety, vexation, or

12

anger" and "did not provide direct evidence of the nature, duration, or severity of his anguish." But the testimony of Calderon's panic at the accident, the humiliation of his inability to care for himself, the frustration of being unable to finish his education or play sports with his son, and the shame of being unable to provide for his family is evidence of the nature, duration, and severity of his anguish.

Dabbs further contends that the award is excessive because the evidence shows that other circumstances contributed to Calderon's pain and anguish. Calderon has suffered from hydrocephalus, a medical condition affecting cognition and memory, since birth. He has never been able to drive or obtain employment other than manual labor. In addition, after the accident, he was diagnosed with diverticulitis, a painful and chronic gastrointestinal disease. Maria testified that Calderon has undergone several surgeries for his diverticulitis, after which she cared for him (although he did not need the comprehensive care required after the accident). She also testified that Calderon's diverticulitis has added to his despondence.

While Calderon has suffered pain and mental anguish from medical conditions unrelated to his leg injury, the evidence also shows a high degree of past physical pain from the leg injury, the two leg surgeries, and physical therapy. Walking and standing are still painful for Calderon. The evidence also shows a high degree of past mental anguish from this injury, including being unable to care

13

for himself or complete barber college. This is legally and factually sufficient evidence of past physical pain and mental anguish.

### 3. Future physical pain and mental anguish

The trial court awarded $75,000 in future physical pain and mental anguish. Dabbs admits that "*some* amount of money may be appropriate to compensate for future physical pain." However, she contends that the combined award for future physical pain and mental anguish is excessive. We disagree.

Dabbs re-marshals her arguments against past physical pain and mental anguish here. First, with respect to mental anguish, she contends that Calderon did not prove "a high degree of mental pain and distress" and "did not introduce direct evidence of the nature, duration, or severity of his anguish." However, Calderon adduced evidence that many of the circumstances causing his past physical pain and mental anguish will likely continue or reoccur in the future. Calderon testified that, almost three years after his injury, he still cannot stand or walk for very long without pain and swelling. The trial court observed that his injured leg has severely atrophied from nonuse. Calderon testified that he still has metal hardware inside his leg and introduced x-rays showing a system of plates and screws attached to his shin and knee bones. Calderon also testified that he will need surgery to replace or update this hardware. Maria testified that, according to Calderon's doctors, "[t]here

would be surgeries in the future. And he would always have . . . follow-up care because of the hardware that was in his knee, a lot of plates and screws and metal."

As discussed, the evidence supports the conclusion that Calderon's past medical care resulted in pain and anguish; accordingly, evidence that Calderon will need similar additional medical care, including more surgery, in the future is some evidence of the probable nature, duration, and severity of future pain and anguish. Likewise, the evidence that, almost three years after the injury, Calderon's leg has atrophied despite physical therapy, he is still largely unable to walk, he will likely require additional surgery, and his leg continues to hurt and swell is some evidence that his condition, and the resulting physical pain and mental anguish, will persist. *See Hicks*, 834 S.W.2d at 591–92 ("[I]t is inconsistent to find past mental anguish, as the jury did, but not future mental anguish, when the same circumstances that produced at least some of the previous mental anguish are likely to recur."). This is evidence of the nature, duration, and severity of his future pain and anguish.

Second, Dabbs argues that the award is excessive because much of Calderon's future physical pain and mental anguish are attributable to his other medical conditions, not his leg injuries. While the evidence suggests that Calderon will feel future physical pain and mental anguish from medical conditions unrelated to the accident, it also suggests that his leg injuries will cause him additional future pain and anguish. Calderon's leg and foot pain, the anguish of

15

being unable to walk or stand for very long, and the threat of future leg surgery are the result of his leg injuries, not his other medical conditions. Thus, the evidence is legally and factually sufficient to support the court's award for future physical pain and mental anguish.

## C. Future medical expenses

The trial court awarded $25,000 in future medical expenses. To recover for future medical expenses, "the plaintiff must present evidence to establish that in all reasonable probability, future medical care will be required and the reasonable cost of that care." *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). The factfinder may rely "on the injuries suffered, the medical care rendered before trial, the progress toward recovery under the treatment received, and the condition of the injured party at the time of trial." *Id.*

Dabbs asserts that this case is similar to *Rosenboom*. There, the plaintiff fractured her vertebrae and received extensive medical care, but she presented no evidence of the future ramifications of her injury except that she was continuing to feel back pain. *Id.* We concluded that "there was no testimony establishing that in all reasonable probability [the plaintiff] would require future medical care and the cost of such care. Absent this testimony, the evidence was legally insufficient to support the jury's award of $10,000 for future medical care and expenses." *Id.*

Unlike the plaintiff in *Rosenboom*, Calderon adduced evidence of a reasonable probability that he would require future medical care and the cost of such care. As we discussed in our analysis of future physical pain and mental anguish, Calderon adduced evidence, including x-rays, that he still has significant metal hardware inside his leg and will likely require follow-up care and future leg surgery. He also testified that he still struggles with high blood pressure, caused by his pain, which has already caused his to black out at least once. Calderon asked the court to use his past medical expenses—$162,135.60—to estimate his future medical expenses.

Given the chronic nature of Calderon's injuries, the likelihood of future surgery on his leg, and the size of the medical costs already incurred, we find that the evidence is legal and factually sufficient to support $25,000 in future medical expenses.

### D.    Physical impairment

Next, Dabbs contends that the trial court's award of $50,000 for past physical impairment and $25,000 for future physical impairment is not supported by legally or factually sufficient evidence.

"In order to recover damages for physical impairment, 'the effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity.'" *Doctor v. Pardue*,

186 S.W.3d 4, 18 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (quoting *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003)). "[L]oss of enjoyment of life fits best among the factors a factfinder may consider in assessing damages for physical impairment." *Golden Eagle*, 116 S.W.3d at 772. But "[t]he courts of appeals have recognized that physical impairment can encompass economic as well as noneconomic damages." *Id.* at 765.

Dabbs suggests that the physical-impairment award plus the mental-anguish and physical-pain award amounts to double recovery. We disagree. First, Calderon did not seek recovery for lost wages or lost earning capacity *and* physical impairment. Rather, he just sought physical-impairment damages, which may include economic losses. *Id.* Although Calderon had not maintained steady employment before the accident due to his other medical conditions, he had almost completed his barber training. A physical-impairment award associated with his inability to enter his chosen profession could not be duplicative of lost wages or lost earning capacity, which he did not seek.

Second, Calderon adduced evidence that, separate from his physical pain and mental anguish, his enjoyment of life has been and will be diminished as a result of his injuries. *See Figueroa*, 318 S.W.3d at 65 (loss of enjoyment of life, if separate from mental anguish and physical pain, is recoverable under physical impairment). He cannot stand for very long and tires quickly from walking. This

limits his enjoyment of many everyday leisure activities, such as taking walks in his neighborhood and playing sports.

While the evidence strongly suggests that Calderon's employability and enjoyment of life are limited by other medical conditions unrelated to the accident, there is also evidence that his limited ability to walk or stand, which is the result of the accident, has limited his enjoyment of life even more. Accordingly, the evidence is legally and factually sufficient to support the court's award of past and future physical impairment.

We conclude that the evidence is legally and factually sufficient to support each challenged element of damages. Accordingly, we overrule Dabbs's second issue.

## Conclusion

We affirm the judgment of the trial court.


Harvey Brown
Justice

Panel consists of Justices Jennings, Bland, and Brown.